Defendant Rodney Calhoun appeals from a judgment of the trial court granting an injunction in favor of plaintiff Brendle, Inc., in this action to enforce a non-competition covenant.
The facts out of which this proceeding arises are largely undisputed. The parties simply disagree as to whether those facts will support an injunction to enforce a covenant not to compete. Therefore, we review *Page 690 
not the trial court's findings of fact, but its application of law to those findings. Samford v. First Alabama Bank ofMontgomery, N.A., 431 So.2d 146 (Ala. 1983); Home Indemnity Co.v. Reed Equipment Co., 381 So.2d 45 (Ala. 1980); City StoresCo. v. Williams, 287 Ala. 385, 252 So.2d 45 (1971).
Brendle, Inc., is engaged in the business of selling and servicing fire extinguishers, halon fire extinguishment systems, automatic sprinkler systems, and hood systems, as well as selling dry ice, carbon dioxide gas, and safety supplies. Brendle is the largest fire equipment company operating in the City of Montgomery; it services over 90% of all Montgomery area fire extinguishers and fire protection systems. It also provides fire protection service to businesses throughout central and southern Alabama, as well as northern Florida.
In 1975, Brendle hired Calhoun at minimum wage as part of its shop crew. Calhoun's duties included filling and servicing fire extinguishers, assisting in the installation of fire extinguishment equipment, and delivering dry ice. Incidental to his service work, as all of the shop crew members were instructed to do, Calhoun would sometimes suggest to a customer that he needed additional equipment. Calhoun testified that he would always refer the customer to Brendle's office for more information as to pricing and products. He was not permitted to offer, nor did he prepare, bids on equipment for potential Brendle customers. His duties at the time he left Brendle's employ in 1984 were not significantly different from those he had when he started; he was still a member of the shop crew, he still inspected and filled fire extinguishers, and he still assisted in the installation of fire extinguisher systems. He also still delivered dry ice.
In December of 1982, Calhoun signed an employment contract which contained the following provisions:
 "In the event such employment agreement is terminated, Employee hereby promises, covenants and agrees with Employer that for a period of five (5) years from the date of the termination of this agreement, he will not compete, directly or indirectly, either in the fire equipment business or as an employee in same within a one hundred (100) mile radius from the city of Montgomery, Alabama, and Employee agrees not to solicit any fire equipment business and carbon dioxide gas or dry ice business from any and all of the customers of Employer or from any other person, firm or corporation, except on behalf of Employer during this five year period."
Calhoun left Brendle's employ in August of 1984, borrowed $5,000 from a bank, and, with William Michael Ray, organized a corporation, Fire Tech, Inc., for the purpose of engaging in the business of selling and servicing portable fire extinguishers and small fire extinguishment systems in and around the Montgomery area. Because there was not enough business to support both Ray and Calhoun, Ray left the employ of Fire Tech, Inc., in December of 1984. Calhoun operates Fire Tech, Inc., out of his mobile home residence. The only employees of Fire Tech, Inc., are Calhoun and his wife. During its first full year of business, Fire Tech's gross revenues were $36,724.86, and the business showed an operating loss for the year of $7,803.71 (taking into account $8,000 in salaries paid to Calhoun and to his wife and $500 paid to Ray).
During the first few months of conducting his business, Calhoun solicited approximately fifteen of Brendle's customers, four of which ultimately became customers of Calhoun. Testimony of two of these customers who switched to Calhoun indicated that they did so because they were dissatisfied with Brendle's service practices, which they considered to be unsafe.
Brendle, Inc., brought this suit, seeking to enforce the covenant not to compete. The trial court granted an injunction prohibiting Calhoun, for a period of five years,
 "a. From competing with Brendle, Inc. directly or indirectly, either in the fire equipment business or as an employee in the fire equipment business within a radius of one hundred (100) miles from the City of Montgomery, Alabama. . . ." *Page 691 
 b. From soliciting any fire equipment business or carbon dioxide gas or dry ice business from any person, party or corporation or entity within said one hundred (100) mile radius. . . .
 "c. [From] [u]tilizing any manner of information, documents, records or other information of any kind and nature obtained from Brendle, Inc., or learned by Rodney Calhoun during his employment as an employee of Brendle, Inc., in any fire equipment business or as an employee of any fire equipment business or selling, servicing or delivering any carbon dioxide gases or dry ice products, within said one hundred (100) mile radius. . .
 "d. From divulging or making available in any manner to any person, firm or corporation or entity of any kind or nature any information, records, documents, sale prices, prices for services rendered, costs of goods or other business records or business information of Brendle, Inc., to any person, firm or corporation at any location who may utilize said information, documents or records, etc., within said one hundred (100) mile radius it being the intent of this injunction that Rodney Calhoun shall not utilize, or permit anyone else to utilize within the one hundred (100) mile radius any of the information referred to herein. . . ."
The injunction also provided:
 "2. As to any existing service being provided by Rodney Calhoun or contracts which Rodney Calhoun may presently have existing, which are in violation of this injunction, Rodney Calhoun shall have thirty (30) days from the date of this Order to terminate said contracts and cease said services."
On May 15, 1986, Calhoun filed a motion with the trial court to stay the trial court's injunction, which was denied, and filed his notice of appeal. This Court granted a conditional stay of the injunction on June 5, 1986.
Contracts restraining employment are looked upon with disfavor in modern law. Burkett v. Adams, 361 So.2d 1 (Ala. 1978); White Dairy Co. v. Davidson, 283 Ala. 63, 214 So.2d 416
(1968). Section 8-1-1, Ala. Code 1975, expresses the public policy of Alabama that contracts restraining employment are disfavored:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
Nevertheless, even if a covenant not to compete fits literally within the exception of § 8-1-1, the courts will enforce its terms only if:
"1. the employer has a protectable interest;
 "2. the restriction is reasonably related to that interest;
 "3. the restriction is reasonable in time and place;
 "4. the restriction imposes no undue hardship [on the employee]."
Greenlee v. Tuscaloosa Office Products Supply, Inc.,474 So.2d 669, 671 (Ala. 1985), quoting DeVoe v. Cheatham,413 So.2d 1141 (Ala. 1982); see also, James S. Kemper Co. v. Cox Associates, 434 So.2d 1380 (Ala. 1983).
 "In order to have a protectable interest, the employer must possess 'a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.'"
Greenlee, 474 So.2d at 671, quoting Cullman Broadcasting Co. v.Bosley, 373 So.2d 830, 836 (Ala. 1979). *Page 692 
 "In the case of 'post-employment restraint,' as in the present case, justification, according to the Restatement (Second) of Contracts § 188, Comment B (1979), generally must be 'on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment.' Similarly, we have said that 'if an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest.'"
James S. Kemper Co., 434 So.2d at 1384, quoting DeVoe v.Cheatham, 413 So.2d at 1143.
The evidence established that businesses in Montgomery are required by law to have fire extinguishing equipment. Furthermore, the fire extinguishers must be tagged. These tags indicate who last serviced the extinguisher and the expiration date of the service, thereby indicating the life of the contract on that piece of equipment. "Matters which are completely disclosed by the goods. . . cannot be his secret."Restatement (First) of Torts § 757 (1939).
It is also undisputed that Brendle maintained a magnetic board which contained, among other things, the names of Brendle's customers. This board was originally kept in the employees' break room, where all the employees would gather to take a break. Subsequently, it was moved to the office of Brendle's president. It is undisputed that the magnetic board containing the names of the customers was visible from outside the president's office and, furthermore, that all employees had routine access to this office. Calhoun testified that to obtain customer information for a particular day's work, he would review this magnetic board, or if the information thereon was inadequate, he would, as instructed, search the invoices in various filing cabinets. It was undisputed that these filing cabinets were open to all employees of Brendle. To be protectable, a customer list must be treated in a confidential manner by the employer. Greenly v. Cooper, 77 Cal.App.3d 382,143 Cal.Rptr. 514 (1978).
Testimony at trial by Michael Garrity, president of a competitor of Brendle, who wanted the non-competitive agreement in this case to be held valid so that a similar one could be used by his company, indicated that information concerning pricing of fire equipment services was generally available to anyone. Furthermore, he testified that he knew who Brendle's customers were:
 "Q. . . . Would it be fair to say if he is doing ninety to ninety-five percent of the business in Montgomery that you could open up the Montgomery city directory or go through the Yellow Pages for the City of Montgomery, pick nine out of ten of the businesses in there and odds are nine of those ten are going to have Brendle equipment?
"A. Yes, sir.
 "Q. Could you — is it tough to figure out who Brendle customers are?
 "A. Not so much. We can go into any place of business and normally there is a fire extinguisher visible and we can look at the tag and tell right off whose company it is that services the work.
 "Q. It will also tell you, wouldn't it, when it needs to be serviced?
"A. Yes, sir.
 "Q. And I guess that you could also just call that person and ask them on the phone, couldn't you?
"A. Normally, yes, sir.
". . . .
 "Q. Do you know what Brendle prices are, generally speaking?
"A. Generally speaking, yes, sir."
After a careful review of the record, we hold that the evidence does not support a finding that Calhoun had obtained information rising to the degree of confidentiality required to support the finding of a protectable interest. *Page 693 
The burden is upon the person or entity seeking to enforce a contract which restrains a lawful trade or business to show that it is not void under § 8-1-1, Code, supra. Brendle has failed to carry that burden. It has not shown a protectable interest in its customer lists. In fact, the evidence it offered tended to show that over ninety percent of the businesses in the Montgomery area are its customers and that that information is available to anyone by looking at fire extinguishers which bear its tags. It makes no effort to keep confidential its customer lists. These are in sight of anyone on its premises. One does not have an unfettered right to be free of competition in this country, and contracts which seek to restrain one in the exercise of his right to practice a lawful trade or profession are disfavored.
There is no evidence to support a finding that Calhoun developed a close or special relationship with Brendle's customers during his employment with Brendle. The undisputed evidence is that Calhoun was not Brendle's sole contact with any customer, and that he was not given a particular territory to service. In James S. Kemper Co. v. Cox Associates,434 So.2d 1380 (Ala. 1983), this Court upheld a non-competition agreement entered into by an ex-employee who was the only salesman, solicitor, or servicing agent in Alabama for his employer. The undisputed evidence in this case was that Calhoun was one of five shop crew members who provided fire equipment services to Brendle customers. Furthermore, according to the evidence, fire extinguishers are serviced typically on an annual basis and Calhoun may have provided the service at a particular location one year, but not on the following year or years, since other Brendle employees performed the same service.
Hattie Patterson, a former Brendle customer whose account Calhoun is presently servicing, replied to the question as to which Brendle worker she had dealt with on a particular matter:
 "I don't know. I really do not know, sir, because it wasn't the same worker every time.
". . . .
 "All I know, it was the little red truck when they come out from Brendle. Now, as far as any of them's name, I don't know any of them's name."
Calhoun testified that some customers of Brendle knew his face and knew that he was a Brendle employee. Furthermore, he would occasionally talk to customers about fire extinguishers when he was asked questions about their fire equipment. This evidence alone does not support the finding of a close relationship. Rather, it shows that Calhoun's contacts were infrequent and irregular. Calhoun's sales work was incidental to his main duties of servicing fire equipment. He had no expense account and was not authorized to entertain customers on behalf of Brendle.
"Contracts restraining employment are looked upon with disfavor, because they tend not only to deprive the public of efficient service, but tend to impoverish the individual."Robinson v. Computer Servi-centers, Inc., 346 So.2d 940 (Ala. 1977), citing Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953).
Brendle testified that after high school (from which he did not graduate) he received approximately eleven weeks of fire equipment training in a technical school in the United States Air Force, through which he obtained a military specialization as a fireman. Calhoun learned to install and to service fire extinguishers, which became his principle duties while he was employed with Brendle. Additional training through the years he worked for Brendle was provided by the manufacturers of various fire systems whose schools Calhoun attended. The evidence supports Calhoun's contention that he would be irreparably harmed by enforcement of this non-competition agreement, which restraint would prohibit him from engaging in the only business for which he is trained and has experience. He has a wife and an infant daughter to support, *Page 694 
and his attempts at other ventures have been unsuccessful.
Because we hold that the covenant made the basis of the injunction is void under § 8-1-1, Code, we need not address the issue of whether there was any consideration to support it.
Having carefully reviewed the record, we hold that the non-competition agreement, under the facts of this particular case, is not enforceable. The evidence did not establish the existence of a protectable interest on the part of Brendle, nor did it establish a close or special relationship between Calhoun and Brendle's customers. Furthermore, the restriction imposes an undue hardship on Calhoun.
The judgment of the trial court is reversed, and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.