Kathy King appeals from the trial court's preliminary injunction enforcing a noncompetition agreement between King and Head Start Family Hair Salons, Inc. ("Head Start"). We reverse and remand.
King has worked as a hair stylist for over 25 years. She is a single mother and provides financial support for her daughter, who is in college. Hair styling is King's only vocation. During the 25 years she has been a hair stylist, King has been employed by several different entities rendering hair-care services. The hair-care services offered by Head Start include haircuts, hair coloring, and permanents; it offers those services for both men and women. Head Start had 30 locations *Page 770 
throughout Jefferson and Shelby counties.[1] King was employed by Head Start for approximately 16 years; for most of that time she performed duties as a stylist and, from October 1995 to September 1996, she also managed one of the company's facilities in Shelby County.
In early March 2003, King left her employment with Head Start and began working for another hair-care entity, Sports Clips, as a manager at its Pelham location. The only hair-care service Sports Clips offers is haircuts, and its primary customers are men and boys. Sports Clips is located in the same shopping center as is the Head Start facility at which King had been employed at the time of her resignation. King apparently contacted several of her former coworkers at Head Start in an effort to get them to leave Head Start and work for Sports Clips. After King had been working at Sports Clips for several weeks, she received a letter from counsel for Head Start. The letter informed her that by working as a manager for Sports Clips and by attempting to recruit Head Start employees to work at Sports Clips, she was violating the "Employee Non-Disclosure and Non-Competition Agreement" ("the noncompetition agreement") she had signed in 1995 while she was employed as a manager of one of Head Start's facilities.
The noncompetition agreement prohibited King from working at a competing business within a two-mile radius of any Head Start facility for a period of 12 months after she left the employ of Head Start and prohibited her from recruiting Head Start employees. King continued her employment with Sports Clips after she received Head Start's letter, and Head Start sued King. Head Start filed a motion for a preliminary injunction, seeking to enforce the noncompetition agreement. Head Start also filed an injunction bond in the amount of $2,000.
At the hearing on the preliminary injunction, King testified that she left Head Start to work as a manager for Sports Clips, but she assumed that the noncompetition agreement was invalid because she believed that her employment file, which contained the noncompetition agreement, had been lost or destroyed. Several of Head Start's current employees testified that King had contacted them about leaving their jobs at Head Start to go to work for Sports Clips. The trial court found that King was violating the noncompetition agreement and entered an injunction prohibiting her from working in the hair-care industry within a two-mile radius of a Head Start facility for a period of 12 months after her employment at Head Start had been terminated.
King argues on appeal that Head Start did not meet its burden of proving that the noncompetition agreement is valid and enforceable. Section 8-1-1, Ala. Code 1975, provides that contracts restraining business are void, with certain exceptions. The relevant exception here is set forth in § 8-1-1(b):
 "[O]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part *Page 771 
thereof so long as the . . . employer carries on a like business therein."
In construing § 8.1.1, this Court has stated that restraints on trade are disfavored; however, the terms of the noncompetition agreement will be enforced if:
"(1) the employer has a protectable interest;
 "(2) the restriction is reasonably related to that interest;
"(3) the restriction is reasonable in time and place;
"(4) the restriction imposes no undue hardship."
DeVoe v. Cheatham, 413 So.2d 1141, 1142 (Ala. 1982). King contends that Head Start did not satisfy each of the four elements.
King's most persuasive argument is that the geographic restriction contained in the noncompetition agreement imposes an undue hardship on her. King argues that the restriction — that she may not be employed by a competing business within a two-mile radius of any Head Start facility — may appear insignificant, but under the circumstances here presented, the restriction is unduly burdensome. Specifically, King states that she is 40 years old, that she has been in the hair-care industry for 25 years, and that it is the only industry in which she is skilled and the only industry in which she can find employment. She further states that, as the trial court found, Head Start has 30 locations throughout the Jefferson County and Shelby County area, making it virtually impossible for her to find employment in the hair-care industry at a facility that does not violate the terms of the noncompetition agreement. According to King, the geographic restriction constitutes a blanket prohibition on practicing her trade. King argues that she will be unable to support herself and her daughter if the geographic restriction is upheld.
King compares her situation to the situation of the employee inSheffield v. Stoudenmire, 553 So.2d 125, 126-27 (Ala. 1989), in which this Court held that a noncompetition agreement restricting an employee from competing within a 50-mile radius of his former employer posed an undue hardship on the employee because he was "50 years old, married, and possesse[d] significant financial obligations." Head Start's response to King's argument is that no undue hardship is imposed because the geographic restriction in the noncompetition agreement here "is only a two (2) mile restriction."
King's circumstances are unique. When she signed the noncompetition agreement, there were approximately 15 Head Start facilities located throughout Jefferson and Shelby Counties. Now there are approximately 30 facilities located throughout the area, dramatically increasing King's difficulties in finding employment in the hair-care industry that does not violate the noncompetition agreement. It cannot reasonably be argued that King, at the age of 40 and having spent more than half of her life as a hair stylist, can learn a new job skill that would allow her to be gainfully employed and meet her needs and the needs of her daughter.
In Calhoun v. Brendle, 502 So.2d 689 (Ala. 1986), this Court declined to uphold a noncompetition agreement that restricted the employee from servicing fire-extinguishing equipment within a 100-mile radius of the business location of his former employer. Evidence was presented showing that the employee was trained and educated only in the field of fire-equipment maintenance. The employee also was supporting his wife and an infant child. Under those circumstances, this Court held that enforcement of the noncompetition agreement imposed an undue hardship on the employee because the *Page 772 
agreement prohibited him from practicing the only trade that he knew. Calhoun, 502 So.2d at 693-94. The rationale applied in disallowing the enforcement of the noncompetition agreement inCalhoun was based upon this Court's prior statement regarding noncompetition agreements in Robinson v. Computer Servicenters,Inc., 346 So.2d 940, 943 (Ala. 1977):
 "Contracts restraining employment are looked upon with disfavor, because they tend not only to deprive the public of efficient service, but tend to impoverish the individual. Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953)."
It is upon this same reasoning that we reverse the trial court's order entering a preliminary injunction enforcing the noncompetition agreement. Under the circumstances presented here, enforcement of the noncompetition agreement works an undue hardship upon King. Notwithstanding any protectable interest Head Start may have, the noncompetition agreement cannot so burden King that it would result in her impoverishment. Calhoun,502 So.2d at 693.
Head Start is nevertheless entitled to some of the protection it sought in the noncompetition agreement. Head Start has a valid concern that King would be able to attract many of her former Head Start customers if she is allowed to provide hair-care services unencumbered by any limitations. "An agreement in restraint of trade may be divisible. An unreasonable limitation or restriction may be stricken. . . ." Cullman Broad. Co. v.Bosley, 373 So.2d 830, 835 (Ala. 1979). Furthermore, "a court of equity has the power to enforce a contract against competition although the territory or period may be unreasonable, by granting an injunction restraining the respondent from competing for a reasonable time and within a reasonable area." Mason Corp. v.Kennedy, 286 Ala. 639, 645, 244 So.2d 585, 590 (1971). To prevent an undue burden on King and to afford some protection to Head Start, the trial court should enforce a more reasonable geographic restriction — such as one prohibiting King from providing hair-care services within a two-mile radius of the location of the Head Start facility at which she was formerly employed or imposing some other limitation that does not unreasonably interfere with King's right to gainful employment while, at the same time, protecting Head Start's interest in preventing King from unreasonably competing with it during the one-year period following her resignation. Indeed, King invites a limitation of a two-mile radius from the location of the Head Start facility at which she was last employed in the event this Court finds that the noncompetition agreement is otherwise enforceable:
 "Ms. King respectfully requests that this Honorable Court reverse the trial court's grant of a preliminary injunction and instruct the trial court to either dissolve its injunction altogether or modify its injunction to restrict Ms. King from competing within a two mile radius of the Head Start location where she worked as of the time of her last employment with Head Start."
King's reply brief, p. 18 (emphasis added). Head Start also has a valid objection to King's actively recruiting its employees. King does not object to the enforcement of this portion of the noncompetition agreement in the event this Court finds that the agreement is otherwise enforceable.
The restriction in the noncompetition agreement prohibiting King from working in the hair-care industry within a two-mile radius of any of Head Start's 30 locations is unduly burdensome, and the trial court's order enforcing that restriction is therefore reversed and the case remanded. On remand, the trial court should prohibit *Page 773 
King from competing with Head Start only within a two-mile radius of the location of the Head Start facility at which she was last employed and from actively recruiting its employees, or it should impose some other reasonable limitation that protects King's right to gainful employment while simultaneously protecting Head Start from unreasonable competition from King during the one-year period following her resignation. We remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, JOHNSTONE, WOODALL, and STUART, JJ., concur.
[1] The parties differ as to how many locations Head Start has in Jefferson and Shelby Counties. King states that there are 30; Head Start states that there are about 17. However, the trial court heard ore tenus evidence from both parties during the hearing on the preliminary injunction and concluded that there are 30 Head Start locations in the area. Under the ore tenus rule, we will assume that the trial court's finding on this issue is correct. See Yates v. El Bethel Primitive Baptist Church,847 So.2d 331, 345 (Ala. 2002).