On Application for Rehearing

MOORE, Judge.
This court’s opinion of January 29, 2010, is withdrawn, and the following is substituted therefor.
James Roberson and Penhall Company, Inc., appeal from a judgment awarding C.P. Allen Construction Company, Inc., d/b/a ABC Cutting Contractors (“ABC”), $50,000 — $25,000 in “nominal” damages based on Roberson’s breach of a noncom-pete agreement and $25,000 in damages for Penhall’s tortious interference with that agreement.
ABC, a concrete-cutting company, hired Roberson on August 14, 1995, and soon thereafter began training him as a dispatcher and salesman. On September 11, 1995, Roberson signed an employment contract that contained the following clause:
“I acknowledge that by virtue of my employment I will acquire information concerning [ABC’s] operations, suppliers, and customers, and that such information constitutes valuable and confidential information. I agree that for a period of two years from the date of termination of my employment with [ABC], I shall not directly or indirectly contact, sell and/or service any [of ABC’s] customers, potential customers or customers solicited by [ABC] that I did in fact contact, sell, solicit and/or service during my employment with [ABC] which are located in the State of Alabama and south of the northernmost point of Cullman, Alabama and north of the southernmost point of Clanton, Alabama.”
In the almost 9 years following his signing that agreement, Roberson became ABC’s primary salesman for at least 36 ABC customers that were located in the territory outlined in the agreement (hereinafter referred to as “the covered territory”).
On August 2, 2004, ABC terminated Roberson’s employment. Thereafter, Roberson contacted Penhall, one of ABC’s two chief competitors in the Birmingham concrete-cutting market, about obtaining a sales position. With full knowledge of the noncompete agreement Roberson had signed, Penhall hired Roberson, and he started working for Penhall on January 3, 2005. Thereafter, Roberson, on behalf of Penhall, contacted some of his former ABC clients in the covered territory and completed sales to those clients amounting to approximately $4,000. ABC issued a letter to Roberson requesting that he cease and desist from further soliciting business from its clients.
On February 24, 2005, ABC filed a two-count complaint against Roberson seeking an injunction and damages on account of his alleged violation of the noncompete agreement and seeking damages for Roberson’s alleged conversion of company property. ABC also applied for a temporary restraining order on March 17, 2005, and for a preliminary injunction on April 4, *474 2005. Following hearings on April 7 and 8, 2005, the trial court denied ABC’s requests for a temporary restraining order and for a preliminary injunction on April 20, 2005. ABC subsequently amended its complaint to add a claim against Roberson for allegedly violating the Alabama Trade Secrets Act, Ala. Code 1975, § 8-27-1 et seq., adding Penhall as a defendant, and asserting that Penhall tortiously interfered with ABC’s noncompete agreement with Roberson.
The case proceeded to trial on June 30, 2008. On October 3, 2008, the trial court entered a judgment awarding ABC $25,000 in “nominal” damages on its breaqh-of-contract claim against Roberson and $25,000 in damages on its intentional-interference-with-contractual-relations claim against Penhall. Following the denial of their postjudgment motion, Roberson and Penhall appealed to this court; this court remanded the case to the trial court for it to adjudicate the conversion and trade-secrets claims. At the request of ABC, the trial court dismissed those claims with prejudice, rendering the October 3, 2008, judgment final. See N.H. v. T.A.P., 963 So.2d 97, 99 (Ala.Civ.App.2007) (“A final judgment is one that ‘ “disposes of all claims or the rights and liabilities of all parties.” ’ ” (quoting Wright v. Wright, 882 So.2d 361, 363 (Ala.Civ.App.2003), quoting in turn Carlisle v. Carlisle, 768 So.2d 976, 977 (Ala.Civ.App.2000))); see also Faulk v. Berry, 984 So.2d 426, 427 (Ala.Civ.App.2007). The appeal then ripened for this court’s consideration. See Baugus v. City of Florence, 968 So.2d 529, 533 (Ala.2007).
On appeal, Roberson and Penhall argue that the trial court erred in finding the noncompete agreement to be enforceable, erred in awarding damages that were unsupported by the evidence and based on speculation or conjecture, and erred in awarding nominal damages of $25,000 for breach of the noncompete agreement.
We first address Roberson and Penhall’s contention that the trial court erred in impliedly finding that Roberson and ABC had entered into an enforceable noncompete agreement. It is the public policy of Alabama that contracts restraining employment are disfavored. Booth v. WPMI Television Co., 533 So.2d 209, 210 (Ala.1988) (citing DeVoe v. Cheatham, 413 So.2d 1141 (Ala.1982)). Pursuant to § 8-l-l(a), Ala.Code 1975, most agreements restraining employment are void.[1] “Nevertheless, Alabama courts will enforce a non-compete agreement if it (1) falls within a statutory exception to the general prohibition, and (2) is reasonably limited as to territory, duration and subject matter.” Nationwide Mut. Ins. Co. v. Cornutt, 907 F.2d 1085, 1087 (11th Cir.1990) (citing Michael L. Edwards, Covenants Not to Compete in Alabama, 44 Ala. Law. 306 (1983)) (footnotes omitted).
Section 8-l-l(b), Ala.Code 1975, provides the statutory exception to the general rule by stating:
“[Ojne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the ... employer carries on a like business therein.”
A noncompete or nonsolicitation agreement between an employee and his or her employer is enforceable as a reasonable *475 restraint of trade pursuant to § 8-1-1 (b) if:
“(1) the employer has a protectable interest;
“(2) the restriction is reasonably related to that interest;
“(3) the restriction is reasonable in time and place; [and]
“(4) the restriction imposes no undue hardship.”
DeVoe v. Cheatham, 413 So.2d at 1142; see also James S. Kemper & Co. v. Cox & Assocs., 434 So.2d 1380, 1384 (Ala.1983).
In their brief to this court, Roberson and Penhall argue only that ABC did not have a protectable interest that would sustain its right to enforce the non-compete agreement. In order to have a protectable interest, the employer must possess “a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] non-competition agreement.” Cullman Broad. Co. v. Bosley, 373 So.2d 830, 836 (Ala.1979); accord Calhoun v. Brendle, Inc., 502 So.2d 689, 691 (Ala.1986), and Greenlee v. Tuscaloosa Office Prods. & Supply, Inc., 474 So.2d 669, 671 (Ala.1985). In assessing the sufficiency of the interest at stake to determine whether it warrants protection, the supreme court, in DeVoe, supra, relied on Restatement (Second) of Contracts § 188, Comment B (1979), which explained that contracts regarding post-employment restraint are usually justified
“ ‘on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment. Arguably the employer does not get the full value of the employment contract if he cannot confidently give the employee access to confidential information needed for most efficient performance of his job.’ ”
DeVoe, 413 So.2d at 1142-43. By that reasoning, an employer has a protectable interest sufficient to justify enforcement of a noncompete agreement “[i]f an employee [was] in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients.” 413 So.2d at 1143. “A protectable interest can also arise from the employer’s investment in its employee, in terms of time, resources and responsibility.” Nationwide, 907 F.2d at 1087-88.
Roberson and Penhall argue that in his role as a salesman for ABC Roberson did not have access to confidential customer lists. The evidence shows that ABC, Pen-hall, and one other major concrete-cutting company basically split the concrete-cutting market in the covered territory during Roberson’s tenure at ABC. Those three companies solicited work from construction companies in the covered territory that performed projects requiring concrete cutting. ABC identified potential customers by using sources containing public information readily available to its competitors, such as the Yellow Pages, the Internet, and a trade publication known as the “Dodge Report.” ABC also sent its salesmen on the road to look for construction projects in progress from which to solicit business. The record contains no evidence indicating that ABC took any steps to treat its customer list in a confidential manner. Hence, Roberson and Penhall maintain that under Calhoun v. Brendle, Inc., supra, ABC did not have a protecta-ble interest that would warrant enforcement of the noncompete agreement.
Calhoun does hold that an employer does not possess a protectable interest in a customer list that it has not treated confidentially. However, Calhoun hardly stands for the proposition that an employer who deals with publicly identifiable cus *476 tomers may never enforce a noncompete agreement. An employer certainly may have a protectable interest other than an interest in protecting the identity of its customers.
In this case, the undisputed evidence shows that ABC trained and developed Roberson as a salesman in the concrete-cutting industry. Before coming to work for ABC, Roberson had worked for his grandfather in the plumbing business and he knew that the concrete-cutting industry existed; however, he knew nothing about that business. Through his employment at ABC, he learned the trade and became a very good salesman. Once in that position, ABC provided Roberson with the means to entertain client contacts and to develop relationships with ABC’s customers. The record clearly indicates that those relationships are important to stimulating business within the concrete-cutting industry and that Roberson therefore served in a vital capacity for ABC for almost nine years.
In Ormco Corp. v. Johns, 869 So.2d 1109 (Ala.2003), the supreme court recognized that employers have an “important” interest in protecting and preserving customer relationships built and maintained by their sales representatives. In Booth v. WPMI Television Co., supra, the supreme court held that a radio station possessed a protectable interest in its customer relationships that would warrant enforcing a noncompete agreement against a former salesman of several years. In James S. Kemper & Co., supra, the supreme court upheld a noncompete agreement that had been entered into by an ex-employee, who had been the only salesman, solicitor, or servicing agent in Alabama for his employer, based partially on the ground that the employer had a vital interest in restraining the ex-employee from appropriating the employer’s customers with whom the ex-employee had formed relationships during his employment. Based on the principles espoused in those cases, the trial court reasonably could have concluded that ABC’s investment in Roberson and the valuable customer relationships Roberson had built and maintained for ABC while employed by ABC constituted protectable interests that would justify enforcement of the non-compete agreement. We therefore affirm the trial court’s judgment insofar as it holds the noncompete agreement to be enforceable.
We next address Roberson and Penhall’s arguments pertaining to damages. In its judgment, the trial court stated:
“Roberson testified that he had contacted three or four former customers of [ABC] since his termination and since he went to work for [Penhall], He further testified that he had sold product services the value in which he estimated to be several thousand dollars. Witness, Tim Robertson, testified that [Roberson] came out and sold to [a construction company] and that they used Penhall instead of ABC.
“Some of the evidence presented relative to the damages claimed was speculative at best. It is undisputed that ABC business declined after [Roberson] left. It is undisputed that Penhall sales increased when [Roberson] started work for them. However, there were no facts to support what ABC’s loss of business in dollars and cents would have been due to [Roberson’s] employment with Penhall. [ABC’s president] testified that he didn’t have any numbers to offer the Court relative to how much business he lost because of [Roberson].
“On the issue on whether [Penhall] interfered with the contractual relationship between [ABC] and [Roberson], the Court finds from the evidence that [Pen- *477 hall] did intentionally interfere with the contractual relationship of [ABC] and [Roberson].
[[Image here]]
“Therefore, it is Ordered, Adjudged and Decreed, that [Roberson] pay [ABC] nominal damages in the amount of Twenty Five Thousand Dollars and 00/100 ($25,000.00) for breach of contract.
“It is further Ordered, Adjudged and Decreed, that [Penhall] pay [ABC] damages in the amount of Twenty Five Thousand and 00/100 Dollars ($25, 000.00) for intentional interference with the contractual relationship between [ABC] and [Roberson].”
(Bold typeface omitted.)
Roberson and Penhall argue that the evidence does not support the award of $50,000 in damages in this case. Much of their argument is premised on the insufficiency of the evidence relating to compensatory damages. However, we are convinced that the trial court did not award compensatory damages.
After determining that ABC had offered only speculative evidence regarding the extent of the monetary damage to its business by Roberson’s breach of the noncompete agreement, and after noting that ABC’s corporate representative had admitted that he had no estimate as to how much business ABC had lost due to the breach, see Corson v. Universal Door Sys., Inc., 596 So.2d 565, 570 (Ala.1991) (holding that employer claiming compensatory damages for breach of noncompete agreement must prove it lost money because of the breach by showing that it would have gotten the business that went to its former salesman’s new employer), the trial court entered a judgment against Roberson on the claim asserting breach of the noncompete agreement and awarded ABC $25,000, which it denominated solely as “nominal damages.” Under Alabama law, an award of nominal damages is proper when a defendant breached a contract but the plaintiff either suffered no actual damage or failed to prove actual damage. James S. Kemper & Co., 434 So.2d at 1385. Nominal damages are not based on the extent of any loss sustained as a result of the breach but are awarded in recognition of the invasion of the legal rights of the plaintiff. See Avis Rent-A-Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1120 (Ala.2003).
The trial court did not designate the type of damages it was awarding against Penhall; it merely referred to them as “damages.” The damages recoverable for intentional interference with a contractual relationship include:
“ ‘(1) the pecuniary loss of the benefits of the ... relation; (2) consequential losses for which the interference is a legal cause; ... (3) emotional distress or actual harm to reputation if either is reasonably to be expected to result from the interference,’ KW Plastics v. United States Can Co., 131 F.Supp.2d 1265, 1268 (M.D.Ala.2001); and (4) punitive damages.”
White Sands Group, L.L.C. v. PRS II, LLC, 32 So.3d 5, 17 (Ala.2009). In this case, the trial court found that ABC did not prove the extent of its pecuniary or consequential losses, and the record contains no evidence indicating that emotional distress or actual harm to ABC’s reputation had occurred or could be reasonably expected from Penhall’s interference with the noncompete agreement. Thus, it appears that the trial court did not award compensatory damages against Penhall. Hence, the trial court must have awarded ABC nominal damages and/or punitive damages. Penhall concedes that it interfered with the contractual relationship be *478 tween Roberson and ABC, thus acknowledging an invasion of ABC’s legal rights that would support an award of nominal damages. Avis Rent-A-Car Sys., Inc., supra. An award of nominal damages will support an award of punitive damages. Life Insurance Co. of Georgia v. Smith, 719 So.2d 797 (Ala.1998).
Roberson and Penhall argue that an award of $25,000 as nominal damages is excessive. As to Penhall, we cannot address that argument. As shown above, the trial court did not indicate the nature of the damages it awarded against Penhall, except to eliminate compensatory damages. We cannot assume the $25,000 awarded against Penhall consisted entirely of nominal damages and no punitive damages. “ ‘It is the duty of ... the appellant ] to demonstrate an error on the part of the trial court; this court will not presume such error on the part of the trial court. Marvin’s, Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992).’” D.C.S. v. L.B., 4 So.3d 513, 521 (Ala.Civ.App.2008) (quoting G.E.A. v. D.B.A., 920 So.2d 1110, 1114 (Ala.Civ.App.2005)). Because the trial court’s award of damages against Pen-hall could have been in the nature of punitive damages and because Penhall has failed to argue that any award of punitive damages was excessive, Penhall has waived that argument. See Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1167 (Ala.2003) (“Issues not argued in a party’s brief are waived.”). We therefore affirm the trial court’s judgment against Penhall.
On the other hand, the trial court labeled the $25,000 award against Roberson as “nominal damages,” raising the issue whether Alabama law permits such a large nominal-damages award. Alabama law has not heretofore established any limit on the amount that can be awarded as nominal damages, but, by their very nature, such damages are intended to be “[a] trifling sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated” or “[a] small amount fixed as damages for breach of contract without regard to the amount of harm.” Black’s Law Dictionary 418 (8th ed.2004) (emphasis added); see also Williams v. Citizens Bank of Guntersville, 350 So.2d 1031, 1033 (Ala.1977) (recognizing, in dicta, that nominal damages are “ ‘a small sum fixed, without regard to the extent of harm done, by the custom of the jurisdiction in which the action is brought’” (quoting Corbin on Contracts, Vol. 5, § 1001, p. 29-30, and citing Kelly v. Fahrney, 97 F. 176 (C.C.W.D.Ark.1899))); Zok v. Alaska, 903 P.2d 574, 578 (Alaska 1995) (“Nominal damages are by definition minimal monetary damages.”). Nominal damages definitely are not intended as approximations of the compensatory damages that could have or should have been proven.
Like Alabama, Maryland has no statute, rule, or caselaw establishing a limit on an award of nominal damages. In Brown v. Smith, 173 Md.App. 459, 920 A.2d 18 (Md.Ct.Spec.App.2007), the Court of Special Appeals of Maryland stated:
“In the absence of authority limiting an award of nominal damages, the prevailing view appears to be that, although the amount of nominal damages ‘is not limited to one dollar, the nature of the award compels that the amount be minimal.’ [Cummings v. Connell, 402 F.3d 936,] at 943 [ (9th Cir.2005) ]; [s]ee also Romano v. U-Haul Int’l, 233 F.3d 655, 671 (1st Cir.2000)[] (applying same principle, in interpreting jury award of $15,000 in so-called nominal damages for civil rights violation as a compensatory damage award), cert. denied, 534 U.S. 815, 122 S.Ct. 41, 151 L.Ed.2d 14 (2001); Creem v. Cicero, 12 Conn.App. 607, 533 A.2d *479 234, 236 (1987) (‘ “Generally, nominal damages are fixed -without regard to the extent of harm done and are assessed in some trifling or trivial amount’”) (citation omitted); The Toledo Group, Inc. v. Benton Indus., Inc., 87 Ohio App.3d 798, 623 N.E.2d 205, 211 (1993) (‘ “Nominal damages” are some small amount of money, such as $1’); Texas v. Miles, 458 S.W.2d 943, 944 (Tex.Civ.App.1970) (‘ “Nominal” damages consist of a very small, trivial or inconsiderable sum awarded where, from the nature of the case, injury has been done, but the amount of which the proof fails to show').
“Thus, even though the sum awarded as nominal damages may vary somewhat according to circumstances, nevertheless, the award may be deemed excessive if it cannot reasonably be considered ‘minimal’ in the circumstances of the case. See, e.g., Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1491 (5th Cir.1990) (vacating award of $10,000 as excessive under Louisiana law); Chesapeake & Potomac Tel. Co. v. Clay, 194 F.2d 888, 890 (D.C.Cir.1952) (reducing award of $500 to $1); Pierson v. Brooks, 115 Idaho 529, 768 P.2d 792, 800 (Ct.App.1989) (‘the sum of $2,500 is more than nominal’); Davidson v. Schneider, 349 S.W.2d 908, 913 (Mo.1961) (award of $530 in damages was not a nominal award, but ‘an effort at measured compensation’); Fisher v. Barker, 159 Ohio App.3d 745, 825 N.E.2d 244, 247 (2005) (award of $1,500 was jury’s unsupported estimate of value of converted property, not nominal damages); Barbier v. Barry, 345 S.W.2d 557, 563 (Tex.Civ.App.1961) (‘$10,000 is excessive as nominal damages’); Keesling v. City of Seattle, 52 Wash.2d 247, 324 P.2d 806, 809 (1958) ($1 per day damage award for trespass of power transmission line six inches onto plaintiffs property was substantial and unsupported compensatory award, not nominal damages).
“We will apply this prevailing view because we think that to allow more substantial awards to fall within the rubric of nominal damages would vitiate the concept underlying such awards, which is recognition of the violation of a right, not to compensate for actual injury....
“To affirm a substantial damage award that is categorized by the trial court as ‘nominal damages’ would invite uncertainty for trial judges and juries regarding what are ‘nominal damages’ and how they differ from compensatory damages. When a court or jury makes an actual damages award, it must focus on the nature and extent of the injury to the plaintiff, applying well defined legal principles about how that injury may translate into a dollar amount.... When a court or jury makes a nominal damages award, however, it need not focus on the injury to the plaintiff, but merely on recognition of the right.... If we were to allow a judge or jury to award a substantial sum as so-called ‘nominal damages,’ which are neither based on the injury nor subject to the legal principles governing damage awards, we would be creating a new class of damages that are neither compensatory nor punitive. With such an uncertain foundation, any award of this nature poses an intolerable risk of an arbitrary result.”
173 Md.App. at 480-83, 920 A.2d at 30-32 (footnote omitted).
We are in agreement with the Court of Special Appeals of Maryland that the vast majority of courts have held that nominal damages should be minimal awards for technical violations of legal rights when no actual damages are sustained or no actual damages have been *480 proven. See, e.g., Avina v. Spurlock, 28 Cal.App.3d 1086, 105 Cal.Rptr. 198 (1972); Colorado Inv. Servs., Inc. v. Hager, 685 P.2d 1371, 1375 (Col.1984); Hall v. Cornett, 193 Or. 634, 240 P.2d 231 (1952); and Foote v. Clark, 962 P.2d 52 (Utah 1998). Although we recognize that Georgia law differs on this point, see, e.g., MTW Inv. Co. v. Alcovy Props., Inc., 273 Ga.App. 830, 616 S.E.2d 166 (2005) (affirming award of $625,000 in nominal damages in wrongful lis pendens action based on view that nominal damages are relativistic in nature), we cannot conform Georgia’s view of nominal damages to Alabama’s historical treatment of nominal damages as a mere recognition of the commitment of a legal wrong.
In this case, the trial court concluded that Roberson had breached the noncom-pete agreement. The invasion of ABC’s legal rights justified the award of nominal damages, but it did not authorize the trial court to award an amount as high as $25,000. We therefore reverse the judgment insofar as it awards $25,000 in nominal damages against Roberson and remand the case for the trial court to enter a new judgment awarding a minimal amount of nominal damages against Roberson.
APPLICATION OVERRULED; OPINION OF JANUARY 29, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Section 8-l-l(a), Ala.Code 1975, provides:
“Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.”