THOMAS, Judge.
James Paul Eastis appeals from a judgment of the Bessemer Division of the Jefferson Circuit Court declaring that a non-compete agreement that he entered into with Veterans Oil, Inc., is valid and enforceable. We affirm.

Facts and Procedural History

Veterans Oil is a petroleum-products-distribution company that operates principally in the Birmingham area. Eastis began working for Veterans Oil as a customer sales representative in August 2004. In that role, Eastis would contact potential and existing customers to solicit business on behalf of Veterans Oil. In January 2005, John Musgrove, the president of Veterans Oil, approached Eastis concerning a noncompete agreement. According to Musgrove, Eastis was given a $100 per week raise as consideration for his signing the noncompete agreement; Musgrove stated that Eastis was not required to sign the noncompete agreement in order to *445 maintain his employment. According to Eastis, Musgrove gave him a $100 per week raise because of his performance over the time that he had worked for Veterans Oil; Eastis stated that Musgrove required him to sign the noncompete agreement as a condition of continued employment. The noncompete agreement provides that Eastis received a $100 per week raise as consideration for entering into the agreement. The noncompete agreement states:
“As agreed upon initial employment between Veterans Oil Inc. (hereinafter referred to as Company) and James Paul Eastis (hereinafter referred to as I) and in consideration of a $100 per week raise effective at the signing of this agreement, upon the termination of employment with said Company, I shall not compete with the business of the Company, its successors, or its assignees. “Neither shall I directly or indirectly undertake or assist in the solicitation of any customers of any business then being conducted or contemplated by the Company, or its affiliates, to curtail or cancel their business with the Company or its affiliates.
“COMMENCING ON THE DATE OF EMPLOYMENT TERMINATION, this non-compete agreement shall remain in full force for a period of two years.”
Eastis signed the noncompete agreement on February 9, 2005. On the same date, Eastis signed an employment agreement with Veterans Oil. The employment agreement stated, in pertinent part:
“The employee agrees that he or she will not, during his or her employment by the Company, or at any time thereafter, interfere with or disrupt, or attempt to interfere with or disrupt, any business relationship, contractual or otherwise, between the Company and any other party, including clients or prospective clients, suppliers, agents, or the employees of the Company.
“The employee acknowledges that all documents, words, files, customer lists, information and data in his or her possession or custody, whether gathered by the employee or any other person, and whether or not reduced to writing, an electronic or magnetic medium, relating to the business activities of the Company are and shall remain the sole and exclusive property of the Company and/or the Company’s customers.
“That upon the termination of said employment, irrespective of the time, manner or cause of said termination, the employee will surrender to the Company all information written or otherwise in connection with the Company’s customers or business as well as other property of the Company.
“The employee will not during his or her employment or after termination thereof, irrespective of the time, manner or cause of the termination of said employment, directly or indirectly disclose to any person, firm or corporation any Confidential Information as listed below that he or she may have acquired during his or her term of employment.”
The employment agreement defined confidential information as
“information disclosed to the employee or known or gathered by the employee as a consequence of or through his or her employment by the Company and not generally known to the Industry in which the Company is or may become engaged about the Company’s products, administrative services or methods of doing business, including, but not limited to, information relating to trade secrets, marketing techniques and programs, dates, figures, projections, costs, methods of operation, identity of plans or administrative services, estimates, cus *446 tomer lists, customer history, personnel history, financial statements, accounting procedures and selling techniques.”
Eastis continued to work for Veterans Oil until February 11, 2009, when Veterans Oil laid off Eastis because of a downturn in its business. Thereafter, Eastis began working as a customer sales representative for Holmes Oil Company, Inc., one of Veterans Oil’s competitors.
While working for Holmes Oil, Eastis solicited business from customers of Veterans Oil. Musgrove discovered that Eastis was soliciting its customers when some of those customers contacted Musgrove. In response, Veterans Oil sent a letter, through its attorneys, to Eastis and Holmes Oil, explaining the existence of the noncompete agreement between Eastis and Veterans Oil, alleging that Eastis had breached the noncompete agreement by contacting customers of Veterans Oil, and stating that Veterans Oil intended to file a lawsuit against Eastis and Holmes Oil unless Eastis ceased contacting any of Veterans Oil’s customers and provided Veterans Oil with a list of all of its customers that he had contacted. Holmes Oil terminated Eastis’s employment; he had worked for Holmes Oil for 26 days. Eastis had not informed Holmes Oil that he had entered into a noncompete agreement with Veterans Oil.
On April 24, 2009, Eastis filed a complaint for a declaratory judgment, requesting that the trial court declare that the noncompete agreement was invalid. On the same date, Eastis also moved the trial court to enter a preliminary injunction preventing Veterans Oil from enforcing the noncompete agreement. Veterans Oil moved the trial court to dismiss Eastis’s case and responded to Eastis’s motion for a preliminary injunction, alleging that the noncompete agreement was valid.
On June 12, 2009, Veterans Oil answered Eastis’s complaint and filed a counterclaim. In its counterclaim, Veterans Oil alleged that Eastis had breached the employment agreement, that Eastis had been unjustly enriched by his actions, that Eas-tis had misappropriated trade secrets, and that Eastis had tortiously-interfered with Veterans Oil’s business relations. Veterans Oil requested that the trial court order Eastis to disgorge his compensation and commissions from sales made to customers of Veterans Oil and permanently enjoin Eastis from further breaches of the employment agreement, misappropriation of trade secrets, or tortious interference with Veterans Oil’s business. Veterans Oil also requested that the trial court order Eastis to pay restitution in the amount of $20,800 plus interest as repayment for the consideration Eastis had received for signing the noncompete agreement, award Veterans Oil its lost profits, award Veterans Oil punitive damages, and award Veterans Oil an attorney fee and its costs of litigation.
The trial court conducted a hearing on August 24, 2009, at which it heard ore tenus testimony. Thereafter, on September 28, 2009, the trial court entered a judgment determining that the noncom-pete agreement was valid. The trial court declined to award the compensatory and punitive damages that Veterans Oil had sought in its counterclaim. The trial court denied all other relief sought by Eastis and Veterans Oil. Eastis filed a post-judgment motion, which the trial court denied. Eastis subsequently appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Issues

Eastis raises two issues in his appeal: (1) whether the trial court properly determined that the noncompete agreement was valid in spite of what Eastis argues is a *447 finding of fact that the noncompete agreement imposes an undue hardship on Eas-tis; and (2) whether the trial court erred in determining the noncompete agreement was in fact, a valid, enforceable agreement.

Standard of Review

The trial court entered its judgment after receiving ore tenus testimony.
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

Section 8-1-1(a), Ala.Code 1975, provides that “[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.” Section 8-1—1(b), however, provides an exception to the general prohibition on contracts in restraint of trade. It provides that
“[o]ne who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.”
A noncompete agreement between an employee and his or her employer is valid and enforceable under the exception provided in § 8-1-1 (b) if:
“(1) the employer has a protectable interest;
“(2) the restriction is reasonably related to that interest;
“(3) the restriction is reasonable in time and place; [and]
“(4) the restriction imposes no undue hardship.”
DeVoe v. Cheatham, 413 So.2d, 1141, 1142 (Ala.1982).
Eastis first argues that the trial court erred in determining that the noncompete agreement was valid because, Eastis says, the trial court made a factual determination that the noncompete agreement imposed an undue hardship on Eastis. In its judgment, the trial court stated that, “[g]iven [Eastis’s] age, physical and emotional limitations, lack of education and inability to engage in other employment [Eastis] makes a compelling argument that the restraint imposes an undue hardship.”
Eastis would have us interpret this passage to mean that the trial court made a definitive, factual determination that the noncompete agreement imposes an undue hardship on Eastis. We disagree. Read in the context of the whole of the judgment, the above passage is more correctly *448 read as stating that the trial court found that Eastis had made a good argument concerning the issue of undue hardship or that Eastis had raised certain points that would appear to favor Eastis concerning the issue of undue hardship.
The above-quoted passage from the trial court’s judgment is, at best, ambiguous in its meaning.
“Courts interpret judgments by the same rules of construction as ‘other written instruments.’ Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970). ‘If there is uncertainty and ambiguity in a ... judgment, the [reviewing] court must construe it so as to express the intent of the ... trial judge.’ Price v. Price, 360 So.2d 340, 343 (Ala. Civ.App.1978). See also Inter-Connect, Inc. v. Gross, 644 So.2d 867, 868 (Ala. 1994) (‘“Rules applicable to the construction and interpretation of contracts are applicable to the construction and interpretation of judgments.” ’) (quoting Hanson v. Hearn, 521 So.2d 953, 954 (Ala.1988)).”
Boyd v. Franklin, 919 So.2d 1166, 1171 (Ala.2005).
“Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that -will give effect and meaning to all of its terms. See [Voyager Life Ins. Co. v. Whitson, 703 So.2d 944,] 948-49 [ (Ala.1997) ]; Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995).”
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000). Following our well established rules of judicial interpretation, any ambiguity that may be present in the above passage in the trial court’s judgment should be read in a way that upholds, rather than destroys, the trial court’s judgment. Therefore, we find no merit in Eastis’s argument that the trial court could not have determined that the noncompete agreement was valid because it had made a factual finding that the noncompete agreement imposed an undue hardship on Eastis.
Eastis next argues that the non-compete agreement imposes an undue hardship on him and, thus, is invalid because, Eastis states, “due to his age, education level, and physical disabilities, he cannot do anything else” except work as a customer sales representative for a petroleum-products-distribution company.
In support of his argument, Eastis cites Chavers v. Copy Products Co., 519 So.2d 942 (Ala.1988). In Chavers, the Alabama Supreme Court held that a noncompete agreement was invalid because the former employee was prevented from practicing his trade where it was “undisputed that [it was] the only trade he knows and by which he can support himself and his family.” Chavers, 519 So.2d at 945. In this case, the evidence at trial showed that Eastis was 57 years old and had been working since he was 18 or 19 years old. Eastis has worked as a customer sales representative for petroleum-products-distribution companies for only the last eight of those years.
Before working in petroleum-products sales, Eastis had worked for seven or eight years at Shell Auto Electric, where he rebuilt vehicle alternator rotors. Eastis left Shell Auto Electric and joined the United States Navy for one year. After leaving the Navy, Eastis was the owner of Southern Electric and Radiator, a company that rebuilt industrial starters, alternators, and generators and performed radiator repair for heavy equipment. Eastis testified that, although he was the owner *449 of the company, he also worked in the company’s shop. Eastis later merged Southern Electric and Radiator with Radiator and Electric, Inc., which was owned by Billy Deerman. After an undefined period, Eastis sold his part of Radiator and Electric, Inc., to Deerman, and Eastis then began working for Allen Oil Company, a petroleum-products-distribution company. Eastis then left Allen Oil to work for Bessemer Oil Company, another petroleum-products-distribution company. Eas-tis worked for Bessemer Oil for about a year before he began working for Veterans Oil. The testimony at trial shows that Eastis has worked in a variety of occupations and that petroleum-products sales is not his only marketable skill or trade; therefore, we cannot conclude that the noncompete agreement prevents Eastis from practicing the only trade that he knows.
Eastis next argues that the non-compete agreement imposes an undue hardship, and, thus, is invalid because, he says, it is not sufficiently limited geographically. However, Eastis does not cite any relevant authority to support his assertion that the noncompete agreement was not reasonably limited in geographical scope. The only authority that Eastis arguably cites in support of his argument on this issue is Benchmark Medical Holdings, Inc. v. Rehab Solutions LLC, 307 F.Supp.2d 1249 (M.D.Ala.2004). The issue in Benchmark Medical was whether, on summary judgment, the time and geographic limitations in a noncompete provision in contract for the sale of a business were reasonable. The federal district court explained that in Alabama, “ ‘[wjhere a sale of good will is involved, ... the buyer’s interest in what he has acquired cannot be effectively realized unless the seller engages not to act so as unreasonably to diminish the value of what he has sold.’ ” Benchmark Medical, 307 F.Supp.2d at 1264 (quoting Greenlee v. Tuscaloosa Office Prods. & Supply, Inc., 474 So.2d 669, 671 (Ala.1985), quoting in turn Restatement (Second) of Contracts § 188, cmt. b (1981)). The federal district court then determined that summary judgment was inappropriate in that case because there was a factual dispute over whether the purchaser had bought only the current structure of the business or whether it had bought the potential for future expansion of the business in its operational area. The discussion in Benchmark Medical regarding the sale of good will of a business is irrelevant to the instant case.
“Rule 28(a)(10)[, Ala. R.App. P.,j requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala. Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
White Sands Group, L.L.C. v. PRS, II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Because Eastis has failed to support his argument on this issue with any relevant legal authority, we will not further consider that argument.
*450 Finally, Eastis argues that the noncompete agreement was not valid and enforceable because, he says, Veterans Oil did not have a protectable interest. “ ‘In order to have a protectable interest, the employer must possess “a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.” ’ ” Calhoun v. Brendle, Inc., 502 So.2d 689, 691 (Ala.1986) (quoting Greenlee, 474 So.2d at 671, quoting in turn Cullman Broad. Co. v. Bosley, 373 So.2d 830, 836 (Ala.1979)).
“ ‘In the case of “post-employment restraint,” as in the present case, justification, according to the Restatement (Second) of Contracts § 188, Comment B (1979), generally must be “on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment.” Similarly, we have said that “if an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest.” ’ ”
Calhoun, 502 So.2d at 692 (quoting James S. Kemper & Co. v. Cox & Assocs., 434 So.2d 1380, 1384 (Ala.1983), quoting in turn DeVoe, 413 So.2d at 1143).
At Veterans Oil, Eastis was in a position to develop close relationships with its customers. Eastis served as the prime contact for the customers whose accounts he serviced, who would place their orders through Eastis. Because of Eastis’s close contact with Veterans Oil’s customers, Veterans Oil had a protectable interest; therefore, there is no merit in Eastis’s argument on this issue. See Roberson v. C.P. Allen Constr. Co., 50 So.3d 471, 475 (Ala.Civ.App.2010); Corson v. Universal Door Sys., Inc., 596 So.2d 565, 565-66 (Ala.1991); and Clark v. Liberty Nat’l Life Ins. Co., 592 So.2d 564, 566 (Ala.1992).

Conclusion

Because Eastis has not shown any error by the trial court, the trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN and MOORE, JJ., concur.
BRYAN, J., dissents, with writing, which THOMPSON, P.J., joins.