PER CURIAM.
CVS/Caremark Corporation (“CVS”) appeals from a judgment awarding Gloria Washington permanent-total-disability benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975 (“the Act”). We affirm.
Washington was employed as a packer and shipper in CVS’s mail-order-pharmacy warehouse from 2002 to 2010. In February 2008, Washington injured her right shoulder when she fell over a pallet jack in the CVS warehouse. Following shoulder surgery and a period of rehabilitation, Washington returned to work in September 2008 with light-duty restrictions and accommodations. She continued to experi *393 ence pain in her shoulder and neck, however; typically, she either left work early or missed work altogether two or three days each week. In August 2009, Washington filed a complaint seeking benefits under the Act for a permanent total disability.
In April 2010, Washington’s physician changed her work restrictions from light duty to “sedentary work only, with no pushing or pulling over zero pounds with the right arm, no reaching above the shoulder level on the right side, and no repetitive motion with the right arm.” In July 2010, Washington informed her supervisor that she was going to have to quit work because she could not lift anything and she was in constant pain. Washington’s supervisor informed her that the warehouse was scheduled to close in October 2010 and encouraged her to stay until that time so that she could receive severance pay. Washington worked until October 29, 2010, when the CVS mail-order-pharmacy warehouse closed.
The case was tried in July 2011, based primarily on the parties’ stipulations, Washington’s medical records, and the deposition testimony of vocational experts for both parties. Washington was the sole live witness. Her vocational expert, John M. Long, Jr., stated that, if Washington’s pain were controlled so that she could work according to her functional capacity evaluation (“FCE”), she would have a vocational disability of 55 to 60 percent. However, with pain at the level Washington reported, Long opined that Washington was completely unable to work. Russ Gurley, the vocational expert retained by CVS, stated: “Based on the ability to work full-time at the levels recommended by the FCE and by [her treating physicians], considering Ms. Washington’s demonstrated ability to perform light duty work for two years after her shoulder surgery, and considering loss of access to jobs and wage loss, Ms. Washington has a vocational disability rating of 40 to 50 percent.”
At the time at trial, Washington was 54 years old. She has an llth-grade education but does not have a general equivalency diploma. She testified that she had been employed by HealthTex, a manufacturer of children’s clothing, for 25 years. After the HealthTex plant closed in 2001, Washington drew unemployment-compensation benefits for a year and then went to work for CVS. After the CVS warehouse closed in 2010, Washington neither worked nor sought work because, she said, the pain in her neck and shoulder prevented her from working. She stated that the pain also prevented her from doing her household chores and that she “sit[s] at home, watching TV mostly.”
Washington acknowledged that she had applied for and had been receiving unemployment-compensation benefits of $288 per week since October 2010, when the CVS warehouse closed, and that she had also applied for Social Security disability benefits. Counsel for CVS, without objection, cross-examined Washington at length about the inconsistency between her application for and receipt of unemployment-compensation benefits and her claim that she was permanently and totally disabled. Washington stated that, in order to continue to receive unemployment-compensation benefits, she completes a weekly on-line recertification of her eligibility for the benefits by answering questions on a computer form provided by the Department of Industrial Relations (“DIR”).[1] Initially, Washington testified that she had respond *394 ed to the DIR questions regarding whether she was “mentally and physically able to work” and “available for and seeking work in Alabama” by answering “no,” because, she said, she was neither able to work, nor available for work, nor seeking work.[2] She maintained that, despite such answers, she had “continued to receive benefits anyway.” During further cross-examination, however, the following occurred:
“Q. [By counsel for CVS]: In order to receive unemployment-compensation benefits, you must be able to work. Are you able to work?
“A. [By Washington]: No.
“Q. Have you told the State of Alabama you’re not able to work?
“A. No.
“Q. As far as they know, you are able to work?
“A. Yes.”
Washington also testified that she had applied for Social Security disability benefits and that her application was pending. Counsel for CVS questioned her further:
“Q. And when you applied for Social Security disability benefits, are you claiming that you are unable to work?
“A. Yes, sir, I’m unable.
“Q. So you understand you’re telling the State of Alabama that you’re able to work, and you’re telling the federal government you’re unable to work. Is that your understanding?
“A. Yes.
“Q. And you’re going to continue to make a claim for Social Security disability after today?
“A. I’m not — I can’t work.
“Q. Okay. And you’re going to continue to receive unemployment compensation . from the State of Alabama as long as you can?
“A. Yes.”
In a supplemental posttrial brief, CVS argued that Washington’s application for and receipt of unemployment-compensation benefits was inconsistent with her permanent-total-disability claim and that her permanent-total-disability claim was, therefore, barred by the doctrine of judicial estoppel.[3] On August 19, 2011, the trial court rendered and entered a judgment containing the following conclusions of law:
“The court finds that [Washington] is permanently and totally disabled from gainful employment as a result of the subject on-the-job-injury. The court notes that [Washington] applied for and received unemployment benefits following her employment with CVS. While the court certainly does not condone her actions in that regard, the Court finds that Washington’s claim for permanent and total disability is supported by substantial evidence. The court further notes that there is no provision under *395 Alabama’s Workers’ Compensation Act that prohibits a plaintiff from pursuing workers’ compensation benefits if [she has] applied for and received unemployment compensation. Florence Enameling Co. v. Jones, 361 So.2d 564 (Ala.Civ.App.1978).”
CVS filed a timely postjudgment motion, (a) asserting judicial estoppel as an affirmative defense (which defense, CVS insisted, had been presented and litigated at trial), (b) complaining that the trial court had made no findings or conclusions responsive to the judicial-estoppel issue, and (c) attempting to distinguish Florence Enameling Co. v. Jones, 361 So.2d 564 (Ala.Civ.App.1978), the decision upon which the trial court had relied in holding that Washington’s receipt of unemployment-compensation benefits did not prohibit her from being awarded permanent-total-disability benefits under the Act.
Washington moved to strike the judicial-estoppel defense, arguing that CVS had waived that defense by failing to assert it in its answer or other responsive pleading. Following a hearing at which the parties’ counsel presented oral argument, the trial court rendered and entered an order denying CVS’s postjudgment motion and granting Washington’s motion to strike the affirmative defense of judicial estoppel. The trial court addressed the judicial-estoppel issue as follows:
“The court specifically addressed the evidence regarding the unemployment benefits received by [Washington] in its order, noting that while the court did not condone [Washington’s] conduct in that regard, such evidence was only one piece of evidence considering [Washington’s] claim for disability. The court noted further that there was other competent and substantial evidence supporting [Washington’s] claim of permanent and total disability, most of which was undisputed.
“From a judicial-estoppel perspective, while it is true that [Washington] represented to the state for a period of time that she was, in effect, willing and able to do some type of work in order to receive those [unemployment-compensation] benefits, the court again notes that there was other substantial, competent, and mostly undisputed evidence that supports her claim for permanent and total disability when all the evidence is viewed and weighed in its totality.
“The court also considered [Washington’s] objection/motion to strike affirmative defense of judicial estoppel. Affirmative defenses are required to be specially [pleaded] in an answer or other responsive pleading. Rule 8(c), Ala. R. Civ. P. However, Rule 15(b), Ala. R. Civ. P., allows for such amendments to conform with the pleadings. In this case, defense counsel claims that they did not plead the affirmative defense of judicial estoppel in their answer or a responsive pleading because they were unaware that [Washington] had applied for and received unemployment benefits for a period of time following her job ending with [CVS], until she testified in that regard at trial. The court takes judicial notice of the fact that when an employee makes a claim for such benefits, the employer is immediately notified of the claim by the state in order for the employer to object to the claim. Therefore, [CVS] should have had prior knowledge of the claim long before trial that would have triggered a duty to amend the answer to plead this affirmative defense.
“[C]ounsel [for CVS] further argues that they made a request for supplementation of [Washington’s] discovery in February 2011, which should have caused [Washington], through counsel, *396 to inform [CVS] of the unemployment claim. However, a review of the request reveals that [CVS] was requesting documents in [Washington’s] possession evidencing application and supporting documents and materials submitted to or received from the Alabama [Director of Industrial Relations] supporting final determinations of benefits to [Washington], to which she responded: ‘[Washington] is not in possession of any such documents.’ There is no reason not to believe that this was an accurate and truthful response as [Washington] testified that she did all applications, etc. ‘online.’
“For the reasons addressed above concerning the evidence of application for and receipt of unemployment benefits, the court properly considered the evidence in the light it should have been — one piece of the totality of the evidence concerning [Washington’s] claim for permanent and total disability.
“Having considered the oral and written arguments of counsel, it is hereby ordered, adjudged, and decreed that [CVS’s] motion to alter, amend, or vacate is hereby denied. [Washington’s] objection/motion to strike affirmative defense of judicial estoppel is hereby sustained/granted.”
CVS timely appealed, arguing that the trial court erred in striking its judicial-estoppel defense and insisting that Washington’s claim for permanent-total-disability benefits was barred by the doctrine of judicial estoppel and, in the alternative, arguing that the trial court’s permanent-total-disability determination is not supported by substantial evidence.

Standard of Review

Our review of this case is governed by the Act, which states, in pertinent part: “In reviewing the standard of proof ... and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Ala.Code 1975, § 25 — 5—81(e)(1). See also Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996). “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81(e)(2). Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 268 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975).

Discussion

Judicial Estoppel

“ ‘The doctrine of judicial estoppel “applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted.” ’ ” Ex parte First Alabama Bank, 883 So.2d 1236, 1241 (Ala.2003) (quoting Jinright v. Paulk, 758 So.2d 553, 555 (Ala.2000), quoting in turn Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So.2d 844, 846 (Ala.1992), quoting in turn Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.1988)).
In White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 911 (Ala.Civ.App.2012), a majority of this court indicated its willingness to apply the doctrine of judicial estoppel in an appropriate workers’ compensation case. We noted, however, that one who receives unemployment-compensation benefits and later claims to be permanently and totally disabled for the same period has not necessarily asserted inconsistent positions. Citing Professor Larson’s treatise, we explained:
*397 “Professors Arthur Larson and Lex K. Larson have discussed whether a claim that one is willing and able to work is totally inconsistent with a subsequent claim that one is permanently and totally disabled for the same period:
“ ‘Several cases have appeared in which workers have applied for and received unemployment benefits on the strength of their representation that they were physically available for work, and later have applied for worker’s compensation benefits on the theory that they were totally disabled during the same period. At first glance the two positions may appear mutually exclusive; but the inconsistency disappears when the special meaning of disability in worker’s compensation is remembered, involving ... the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons.
“‘Thus, the injured claimant may honestly represent to the [unemployment-benefits] office that he or she is able to do some work, and with equal honesty tell the [trial court in a workers’ compensation case] later that he or she was totally disabled during the same period since, despite being capable of doing some kinds of work, no one would offer a job because of the claimant’s physical handicaps. Whether such a double recovery of benefits should be tolerated in view of the desirability of treating all segments of the social insurance pattern as a coordinated whole is another question; the point here is that the courts do not feel it to be their duty to rule out an otherwise proved case of disability because of this type of representation in an unemployment insurance application.’
“4 Arthur Larson and Lex K. Larson, Larson’s Workers’ Compensation Law § 84.05 (2006) (footnote omitted).”
88 So.3d at 912. In Clemons, this court held that the claimant was not precluded by the doctrine of judicial estoppel from seeking benefits under the Act for a permanent total disability after having asserted to DIR that he was able to work during the same period. We reached that conclusion because the claimant, Clemons,
“testified that he ‘felt like [he] was able to work’ at the time he received unemployment-compensation benefits. Clemons testified that he has tried to find work but has been unable to find any work that he can do. Clemons further testified that, if he could find a job, he would give it his ‘best shot.’ ”
88 So.3d at 912.
In contrast to Clemons, Washington testified that she was not able to work, that she was not available for work, and that she had not sought work after the CVS warehouse closed. The trial court’s contrary finding — that Washington had represented to DIR “that she was, in effect, willing and able to do some type of work in order to receive [unemployment-compensation] benefits” — has no support in the evidence. Washington admitted at trial that she had misrepresented to DIR her ability to work, her availability for work, and her having sought work. Thus, the rationale in Clemons would appear to mandate the conclusion that Washington is judicially estopped, by her representations to DIR, from receiving permanent-total-disability benefits under the Act. We do not reach that conclusion, however, because we are convinced that CVS waived the judicial-estoppel defense by failing to assert it in its answer or another responsive pleading.
Judicial estoppel is an affirmative defense, Middleton v. Caterpillar Indus., *398 Inc., 979 So.2d 53, 57 (Ala.2007), and “failure to plead the defense typically constitutes a waiver,” White Tiger Graphics, Inc. v. Clemons, 88 So.3d at 910. CVS argues that it did not waive the affirmative defense of judicial estoppel because the issue was tried by the consent of the parties. Rule 15(b), Ala. R. Civ. P., provides: “When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”
“The decision whether the issue has been tried by express or implied consent is a matter within the trial court’s discretion and will not be reversed except upon a showing [that the trial court acted outside the limits of its discretion]. But [if] the court determines that the issue has been litigated with the consent of the parties, it has no discretion to deny the motion to amend.”
6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1493 at 46-47 (2010).[4]
“[I]mplied consent of the parties can be inferred from an opposing party’s failure to object to introduction of evidence raising the disputed issue initially.” International Rehab. Assocs., Inc. v. Adams, 613 So.2d 1207, 1213 (Ala.1992) (emphasis added). An opposing party’s failure to object to the introduction of evidence raising an unpleaded claim or defense permits, but does not require, the inference that the opposing party has impliedly consented to litigate the disputed issue. That is so because evidence that supports an un-pleaded claim or defense often overlaps with evidence that supports a pleaded claim or defense, see, e.g., United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co., 81 F.3d 240 (D.C.Cir.1996) (evidence related to unpleaded claim of quasi-contractual unjust enrichment was also relevant to pleaded claim of quantum meruit based on contract implied in fact).[5] Therefore, consent should not be inferred from the failure to object “absent a clear indication that the party who introduced the evidence was attempting to raise a new issue,” International Harvester Credit Corp. v. East Coast Truck and R.V. Sales, Inc., 547 F.2d 888, 890 (5th Cir.1977), and that the relevance of the evidence to the new issue was reasonably apparent to the opposing party whose failure to object can be deemed to indicate an intent to litigate the new issue, see Nicholls v. Tufenkian Import/Export Ventures, Inc., 367 F.Supp.2d 514 (S.D.N.Y.2005) (although defendant in copyright-infringement action did not assert the affirmative defense of independent creation in his responsive pleading, the issue was tried by the consent of the parties because evidence was introduced at trial without objection and both parties understood that the defense was at issue). The rule in such cases has been explained as follows:
*399 “[W]hen the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under Rule 15(b)(2)[, Fed.R.Civ.P.[6]] The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear.”
Wright et al., § 1493 at 34-40 (emphasis added; footnotes omitted). In the present case, evidence concerning the unpleaded defense of judicial estoppel was also relevant to CVS’s answer generally denying Washington’s claim. CVS did not mention judicial estoppel at trial, and its cross-examination of Washington did not clearly signal an intent to raise the unpleaded defense. More importantly, the present case was tried in 2011, before this court’s decision in Clemons indicated that a majority of the court was willing to apply the doctrine of judicial estoppel, in an appropriate case, to preclude a workers’ compensation claimant from receiving permanent-total-disability benefits because he or she had received unemployment-compensation benefits for the same period. When the present case was tried, the applicable law—Florence Enameling Co. v. Jones, 361 So.2d 564, 567 (Ala.Civ.App.1978) (stating that “there is no provision in the workmen’s compensation law ... disqualifying an employee from receiving workmen’s compensation benefits if he is also receiving unemployment compensation”); and Richardson Homes Corp. v. Shelton, 336 So.2d 1367, 1370 (Ala.Civ.App.1976) (stating that the receipt of unemployment-compensation benefits “does not preclude an award of workmen’s compensation [benefits]”), overruled on other grounds by Ex parte Drummond Co., 837 So.2d 831 (Ala.2002) — would not likely have alerted Washington to the fact that the new evidence was relevant to the unpleaded defense of judicial estoppel.
The trial court struck the affirmative defense of judicial estoppel, concluding that it had been waived, and, thereby, implicitly finding that it had not been tried by the consent of the parties. Despite the fact that the trial court did not employ the analytical framework we have used to decide the waiver issue, its ultimate conclusion was correct. “[An appellate court] can affirm a trial court’s judgment for any reason, even one not contemplated by the trial court. See Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 88 (Ala.2004) (‘This Court can affirm a trial court’s judgment for any reason, but only if the record on appeal evidences the fact that is the basis for the affirmance.’ (citing Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000))).” Carroll v. W.L. Petrey Wholesale Co., 941 So.2d 234, 240 n. 6 (Ala.2006).

The Disability Determination

“Permanent total disability” is defined to include “any physical injury ... resulting from an accident, which injury ... permanently and totally incapacitates the employee from working at and being retrained for gainful employment.” Ala. Code 1975, § 25-5-57(a)(4)d. “Total disability does not mean absolute helplessness; rather, it means that the employee is not able to perform his or her trade and is unable to obtain other reasonably gainful employment.” Dolgencorp, Inc. v. Hudson, 924 So.2d 727, 734 (Ala.Civ.App.2005).
*400 At the time of trial, Washington was 54 years old and had worked for 33 years. She completed the 11th grade and does not have a general equivalency diploma. CVS’s vocational expert testified that, based upon her FCE alone, Washington’s vocational disability is in the range of 40 to 50 percent; Washington’s vocational expert testified that, based upon her FCE alone, Washington’s vocational disability is in the range of 55 to 60 percent. Washington testified that, because of the pain in her neck and shoulder, she could not perform any type of work, and her vocational expert opined that, considering Washington’s reported level of pain, she was completely unable to work.
The trial court, noting that it had had “the opportunity to observe the demeanor, tone, facial expressions, and movements of Washington in court,” found Washington’s testimony to be “credible with regard to her injury,” and it concluded that she was permanently and totally disabled from gainful employment as a result of her work-related injury.
‘“[0]ur review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’ ”
White Tiger Graphics, Inc. v. Clemons, 88 So.3d at 913 (quoting Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007) (opinion on original submission)).
The trial court’s finding of permanent total disability is supported by substantial evidence, and its judgment is due to be affirmed.
AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing, which DONALDSON, J., joins.
THOMPSON, P.J., concurs in the result, without writing.

. On October 1, 2012, the Alabama Department of Industrial Relations merged with the Alabama Department of Labor. The combined departments are now known as the Alabama Department of Labor.

. Section 25-4-77, Ala.Code 1975, provides, in pertinent part:
"(a) An unemployed individual shall be eligible to receive [unemployment-compensation] benefits with respect to any week in a benefit year which begins on or after January 1, 1989, only if the director finds that:
[[Image here]]
"(3) He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work
[[Image here]]
"(5) He has made a reasonable and active effort to secure work...."
(Emphasis added.)

. In White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 911 (Ala.Civ.App.2012), this court noted that "[j]udicial estoppel may apply to statements previously made in both judicial proceedings and quasi-judicial proceedings” such as contested administrative cases.

. We note that Rule 15(b), Ala. R. Civ. P., is similar in substance to Rule 15(b)(2), Fed. R.Civ.P. Thus, we find this treatise addressing the federal counteipart to our Rule 15(b) useful in our analysis of this issue.

. McCollum v. Reeves, 521 So.2d 13, 17 (Ala.1987), is often cited in this context See International Rehab. Assocs., Inc. v. Adams, 613 So.2d at 1214; Watkins v. Central Contracting, Inc., 603 So.2d 899, 901 (Ala.1992). In McCollum, however, the plaintiff objected to the defendant’s attempt to elicit evidence concerning an unpleaded claim seeking an easement for ingress and egress, stating: " ‘We’re not really getting into access.... Not from the pleadings [seeking a judicial determination of a boundary line].' ” 521 So.2d at 17. For that reason alone, and irrespective of any overlap in the evidence concerning the pleaded and unpleaded claims, there was no trial of the unpleaded claim by consent. See Wright et al., § 1493 at 33-34.

. See note 4, supra.