MOORE, Judge.
James Shankles appeals from a judgment entered by the Etowah Circuit Court (“the trial court”) in favor of Troy Moore and Kaci Rogers Moore on their claims arising from the purchase of certain real property from Shankles. We affirm.

Procedural History

On January 17, 2013, the Moores filed a complaint in the trial court against Shan-kles, asserting claims of breach of contract, fraud, and “negligence, wantonness, or recklessness” stemming from the Moores’ purchase of certain real property (“the property”) from Shankles. The Moores also named as defendants in their complaint Susan McMurry, Robert'McMurry, and Realty Plus, Inc. The McMurrys and Realty Plus filed a motion to dismiss on February 19, 2013; the trial court granted that motion in part, dismissing the negligence and breach-of-contract claims against the McMurrys and Realty Plus on March 8, 2013. On that same date, Shan-kles filed a motion to adopt the motion to dismiss filed by the McMurrys and Realty Plus; the trial court denied that motion on March 11, 2013. Following Robert McMurry’s death, his estate was substituted as a defendant. On May 9, 2014, the Moores, Susan McMurry, Robert McMur-ry’s estate, and Realty Plus filed a notice of resolution, and, on May 28, 2014, those same parties filed a joint stipulation of dismissal. The trial court granted the joint stipulation of dismissal, leaving only the claims against Shankles to be decided.
Shankles filed an answer to the Moores’ complaint on July 16, 2013. On March 26, 2015, after a bench trial, the trial court entered a judgment in favor of the Moores and against Shankles and awarded the Moores damages in the amount of $9,900; the trial court’s judgment did not contain findings of fact. Shankles filed his notice of appeal to this court on March 30, 2015.

Facts

Shankles testified that he had owned the property and had lived in the house on the *1256 property from 2000 until 2010. He stated that he had signed a document, which was presented as an exhibit, in which he had agreed for Realty Plus to handle the listing for the sale of the property; he stated that that document identified the property to be sold as “Lot # 7” and listed the size of the lot for sale as 1.18 acres. Shankles stated that he did not see the acreage listing at the time he signed the document. According to Shankles, there was a “for sale” sign in front of the house on the property for “a year or so” before he moved, that, while he lived on the property when it was for sale, there had been a “flyer box” on the property, and that he “believe[d]” that he had seen a flyer, which had been in the flyer box, that had indicated that the property being sold was 1.18 acres. He testified that he had not prepared that flyer.
Troy Moore testified that he had first learned that the property was for sale in 2012 from a “for sale” sign that had been placed in front of the house on the property. He stated that he had looked up the listing for the property on the Multiple Listing Service (“MLS”) and that that listing had noted, among other things, that the property was “almost one and a quarter acres.” According to Troy, the listing price of the property had originally been $229,000, which was more than he and Kaci had wanted to spend, but that the price had later been reduced to $199,000. Troy testified that there had been an informational flyer in a box that had been placed on the property and that the flyer had indicated that the property was “over an acre (1.18 acres) on a highly visible shaded corner lot.” He stated that, after he had viewed the MLS listing and the flyer, he had contacted a real-estate agent so that he and Kaci could view the house and the property. Both he and Kaci testified that the size of the property had been an important consideration in their purchasing the property.
According to Troy, when the real-estate agent took him and Kaci to view the house and the property, there were some documents that were laying on the counter in the house, including a laminated document that contained a map, which, he said, had a shaded area that included lot 6 and lot 7, which, Troy stated, he had taken to represent the property that was for sale. Troy testified that, after viewing the property, he and Kaci had made an offer to purchase the property and that they had ultimately entered into a purchase agreement with Shankles to purchase the property for $185,000. Troy stated that, when he entered into the agreement, it was with the understanding that he was purchasing 1.18 acres. According to Troy, before the closing on the property, he had spoken with Shankles while on the driveway of the house and, at that time, had asked Shan-kles about the size of the property. Troy stated that Shankles had pointed to each corner of the property at specific landmarks, indicating that the property was both lot 6 and lot 7, the same property that had been shaded in the laminated map he had seen at the property. He stated that, at that time, he had been able to clearly see and understand where Shankles was pointing.
The packet of information that Troy was provided at the closing on the property was presented as an exhibit. Troy testified that the documentation in the closing documents indicates that the purchase did not include lot 6, but, he said, the map that was included in those documents had both lot 6 and lot 7 shaded. It appears, however, from the exhibits in the record on appeal, that the map attached to the purchase agreement included both lot 6 and lot 7 in the shaded area but that the map included as part of the closing documents *1257 included only lot 7 in the shaded area. Troy testified that his purchase of the property was his first purchase of a home. He stated that he had chosen not to have the property surveyed, that he had not read the documents when they were given to him at closing because they “would have been there all day long,” and that he had not read the deed when it was given to him. According to Troy, he and Kaci had moved into the house on the property after the closing, and, at some point, he had learned that he did not own lot 6 but, rather, had purchased only lot 7, on which the house is situated. Troy testified that he would not have paid $185,000 for the property if he had. known that it was not the 1.18 acres he had believed it to be. He testified that he had been advised by employees of Realty Plus that Shankles had provided them with the laminated map that had included the shaded area and that he had seen at the house when he had first viewed the property with a realtor. He stated that he had relied on Shankles’s representation as to the size of the lot and that he had paid more for the property than what, he felt was fair. Troy presented as an exhibit a tax appraisal for lot number 6, which indicates that the appraised value of that lot is $9,900.

Standard of Review

“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct'and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)), ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Discussion

Shankles first argues on appeal that the trial court erred in entering a judgment in favor of the Moores because, he says, the doctrine of caveat emptor applies in the present case. “The rule of caveat emptor — ‘let the buyer beware’— applies to sales of used residential real estate in Alabama.” Hays v. Olzinger, 669 So.2d 107, 108 (Ala.1995). The Moores argue that Shankles failed to raise this issue before the trial court and that, as a result, he is precluded from raising that argument for the first time on appeal. The assertion that the doctrine of caveat emptor barred the Moores’ claims was raised in the motion to dismiss filed by the McMurrys and Realty Plus, which was denied, in pertinent part, by the trial court. Shankles filed a motion to adopt that motion to dismiss; however, the trial court denied Shankles’s motion, disallowing him from adopting the arguments raised in the motion to dismiss filed by the McMurrys and Realty Plus. Shankles does not argue on appeal that the trial court erred in disallowing his motion to adopt the motion to dismiss filed by the McMurrys and Realty Plus; thus, that argument is waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (“arguments not raised by the parties [on appeal] are waived”). Our review of the record reveals that *1258 Shankles failed to raise the doctrine of caveat emptor as a defense at any time either in any pleadings or at trial, “[An appellate court] cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
Shankles asserts in his reply brief to this court that he presented “questions and arguments regarding the [Moores’] failure to read the documents, obtain their own survey [of the property], or even walk the land line with [Shan-kles],” thereby, he says, implicitly invoking the doctrine of caveat emptor such that his argument was preserved for appeal. We disagree. To the extent Shankles’s argument can be interpreted as being that his defense that the doctrine of caveat emptor barred the Moores’ claims was tried by the implied consent of the parties, see Rule 15(b), Ala. R. Civ. P., we note first that an appellate court will not consider an issue not raised in an appellant’s initial brief, but raised only in its reply brief. See Brown ex rel. Brown v. St. Vincent’s Hosp., 899 So.2d 227, 234 (Ala.2004). Moreover, each of the references to evidence presented at the trial purportedly speaking to those arguments raised by Shankles in his reply brief — citing “questions and arguments regarding the [Moores’] failure to read the documents, obtain their own survey of the property, or even walk the land line with [Shankles]” — could have been presented in response to the element of the Moores’ fraud claim that required them to prove that they had reasonably relied upon Shan-kles’s false representations. See, e.g., Hunt Petroleum Corp. v. State, 901 So.2d 1, 4 (Ala.2004) (“reliance in the form that the misrepresentation is ‘acted on by the opposite party is an essential element of fraud in Alabama”). “When a party contends that an issue was tried by express or implied consent and the evidence on that issue is also relevant to the issue expressly litigated, there is nothing to indicate that a new issue was raised at trial, and the pleadings are not deemed amended under Rule 15(b)[, Ala. R. Civ. P.].” McCollum v. Reeves, 521 So.2d 13, 17 (Ala.1987). See also CVS/Caremark Corp. v. Washington, 121 So.3d 391, 391 (Ala.Civ.App.2013). Because the evidence Shankles relies on as having been presented with regard to his purported defense based on the doctrine of caveat emptor was relevant to an element of the Moores’ fraud claim and Shankles failed to mention the doctrine of caveat emptor at any time during the trial to clearly signal an intent to raise that un-pleaded defense, see CVS/Caremark, supra, the pleadings were not deemed amended pursuant to Rule 15(b). Shan-kles failed to raise the doctrine of caveat emptor at any time before the trial court and failed to present any arguments speaking thereto such that the trial court or the Moores should have been on notice that Shankles intended to raise that argument as a defense to the Moores’ claims. We therefore decline to reverse the trial court’s judgment based on Shankles’s reliance on the doctrine of caveat emptor for the first time on appeal.
Shankles next argues on appeal that the written document controls the parties’ agreement such that the Moores were precluded from relying on any alleged oral statements. We note, however, that, even to the extent that this argument has merit with regard to the Moores’ fraud claim or their breach-of-contract claim, the elements of which Shankles cites as falling within this argument on appeal, he has failed to argue that that resolution of this issue in his favor would preclude the Moores’ other claim of “negligence, wantonness, or recklessness.” *1259 The trial court did not indicate in its judgment on which of the Moores’ claims it was basing its decision.
“When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver with respect to the issue.”
Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala.2006). In the present case, if we were to assume, without deciding, that Shankles’s argument that the written document superseded any reliance by the Moores on Shankles’s previous statements is applicable to the Moores’ fraud and breaeh-of-contract claims, Shankles’s failure to address the Moores’ additional claim of “negligence, wantonness, or recklessness” constitutes a waiver with respect to that claim in accordance with Fogarty. Because the trial court’s judgment could have been based on that additional claim, we decline to reverse the judgment based on Shankles’s argument speaking to only the fraud and breach-of-contract claims.
Shankles next argues on appeal that the Moores failed to properly prove damages. He states that the Moores “never provided any evidence to show that the value of the land was valued less than what they actually paid for it” and that, therefore, “no damages were proven.” In support of that argument, Shankles merely cites the elements of fraud and the elements of breach of contract, both of which include damages. The citation of those elements, however, does not indicate what is required by the plaintiff to adequately prove those damages, which is the issue raised by Shankles.
“Rule 28(a)(10), Ala. R.App. P., requires an appellant to present arguments in its brief supported by adequate legal authority. Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992); It is not the duty of the appellate court to make arguments for the parties, nor is it the appellate court’s duty to conduct the parties’ legal research. See Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994) (‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by suffi- ' cient authority or argument.’).”
Woods v. Federated Mut. Ins. Co., 31 So.3d 701, 706 (Ala.Civ.App.2009). Because Shankles has failed to cite authority in support of his argument regarding damages, we cannot reverse the judgment based on that argument. Moreover, Shan-kles failed to file a postjudgment motion challenging the sufficiency of the evidence with regard to the trial court’s damages award. See Industrial Techns., Inc. v. Jacobs Bank, 872 So.2d 819, 825 (Ala.2003). We note further, however, that, even if Shankles had preserved the issue for appeal and cited authority in support of his argument pursuant to Rule 28(a)(10), Aa. RApp. P., the Moores presented evidence of the value of the lot, which they had believed to be included in their purchase but later learned had not been deeded to them. Thus, some evidence of damages was, indeed, presented to the trial court by the Moores.
Shankles last argues on appeal that the trial court’s judgment should be reversed based on the trial court’s failure to apply a setoff based on the Moores’ settlement with the MeMurrys and Realty Plus. Shankles cites only Campbell v. Williams, 638 So.2d 804 (Ala.1994), in support of that argument. In Campbell, a jury verdict was returned in the amount of $4,000,000 moments after, two codefen-dants settled their claims with the plaintiff *1260 for $1,000,000. 638 So.2d at 807. The trial court offset the jury’s verdict with the settlement amount and entered a $3 million judgment against the remaining defendant. Id. Our supreme court stated, in pertinent part:
“It is settled law that a person injured by joint tort-feasors may release one or more pro tanto. The tort-feasors may then plead the release as a bar to that amount paid by the released tort-feasor or may place it in evidence, showing payment for the injury up to the amount shown in the release. Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699, 702 (Ala.1982), citing Anderson v. Kemp, 279 Ala. 321, 184 So.2d 832 (1966). This is referred to as the ‘doctrine of Bucyrus-Erie.’ Tatum v. Schering Corp., [523 So.2d 1042], at 1045 [ (Ala.1988) ]. In Hardman v. Freeman, 337 So.2d 325 (Ala.1976), we made it clear that a joint tort-feasor is entitled to post-judgment relief based on a pro tanto settlement and release entered by the other joint tort-feasors, despite the fact that he was unable to plead and prove the pro tanto settlement at trial because the terms of the release were not then final. Id. at 327. The relief to which the joint tort-feasor is entitled is a set-off of the amount of the pro tanto settlement against the amount of the verdict.”
638 So.2d at 812. Unlike in Campbell, however, there was no jury verdict in the present case and the trial court failed to indicate in its judgment how it had calculated damages. We note that the Moores sought both punitive and compensatory damages. Depending on which count the trial court based its judgment on, Shankles might not have been entitled to a setoff in the amount of the settlement with the codefendants. See Norton v. Bumpus, 221 Ala. 167, 169, 127 So. 907, 908 (1930) (“where the plaintiffs action is one in which he may recover punitive or vindictive damages, such action sounds in damages merely, and it is not subject to a plea of set-off’). Because the trial court did not indicate the nature of the damages it awarded, we cannot assume that the amount awarded consisted entirely of compensatory damages. See Roberson v. C.P. Allen Constr. Co., 50 So.3d 471, 478 (Ala.Civ.App.2010). “ ‘It is the duty of ... the appellant[ ] to demonstrate an error on the part of the trial court; [an appellate court] will not presume such error on the part of the trial court. Marvin’s, Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992).’ ” D.C.S. v. L.B., 4 So.3d 513, 521 (Ala.Civ.App.2008) (quoting G.E.A. v. D.B.A., 920 So.2d 1110, 1114 (Ala.Civ.App.2005)). Because the trial court’s award of damages against Shan-kles could have been in the nature of punitive damages and because Shankles has failed to argue that any award of punitive damages is excessive, Shankles has waived that argument. See Roberson, 50 So.3d at 478.
For the reasons discussed in this opinion, the trial court’s judgment is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.