Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0645

_____

### BISCO Refractories, Inc.

### v.

### Wesley Dean

### Appeal from Jefferson Circuit Court
### (CV-20-902179)

MOORE, Presiding Judge.

BISCO Refractories, Inc. ("the employer"), appeals from a judgment of the Jefferson Circuit Court ("the trial court") that awarded Wesley Dean ("the employee") permanent-total-disability benefits under the Alabama Workers' Compensation Act ("the Act"), Ala. Code 1975, § 25-5-

1 et seq. We reverse the judgment and remand the case with instructions.

## Background

Based on the parties' stipulations in the proceedings below, the employee was working as a brick mason for the employer on February 2, 2019, when, due to a work-related accident, he suffered "a fracture of the L1 [lumbar] vertebrae and a fracture of the left calcaneus (heel)." The employee reached maximum medical improvement for his work-related injuries on May 29, 2019. Before that date, the employer paid the employee approximately eight weeks of temporary-total-disability benefits and covered his authorized medical expenses.

On June 11, 2020, the employee filed a complaint seeking, among other things, additional workers' compensation benefits from the employer. On July 16, 2020, the employer filed an answer. The trial court eventually scheduled a trial of the case for October 4, 2024. On June 30, 2025, the trial court entered a final judgment awarding the employee permanent-total-disability benefits. On August 11, 2025, the employer filed a notice of appeal from the judgment.

<u>Issues</u>

The employer argues that the trial court erred in awarding the employee permanent-total-disability benefits because, it says, (1) the trial court ignored undisputed evidence and the finding that the employee was permanently and totally disabled was not supported by substantial evidence and (2) the doctrine of judicial estoppel precludes the employee's claim. We consider the first issue to be dispositive of this appeal, so we do not address the second issue.

<u>Standard of Review</u>

"'The determination of the extent of the employee's disability is a discretionary function of the trial court. <u>Dolgencorp, Inc. v. Hudson</u>, 924 So. 2d 727 (Ala. Civ. App. 2005). It is not within the province of an appellate court to determine or establish the percentage of disability of an injured employee. <u>Hill v. Stevens & Co.</u>, 360 So. 2d 1035 (Ala. Civ. App. 1978). Our review is restricted to a determination of whether the trial court's factual findings are supported by substantial evidence. Ala. Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court's judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court's judgment only if its factual finding is not supported by substantial evidence. <u>See</u> <u>Ex parte M & D Mech. Contractors, Inc.</u>, 725 So. 2d 292 (Ala. 1998). A trial court's findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. <u>Edwards v. Jesse Stutts, Inc.</u>, 655 So. 2d 1012 (Ala. Civ. App. 1995).'"

Landers v. Lowe's Home Ctrs., Inc., 14 So. 3d 144, 151 (Ala. Civ. App. 2007). "Substantial evidence" is "'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So. 2d 262, 268 (Ala. 1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989)); see also Ala. Code 1975, § 12-21-12(d). However, in making its factual determinations, the trial court cannot ignore undisputed evidence. Tarver v. Diamond Rubber Prods. Co., 664 So. 2d 207, 210 (Ala. Civ. App. 1994).

## The Evidence

The evidence relating to the issue before the court consists of the following. The employee testified that he graduated from high school and that, after high school, he enlisted in the United States Army. In 1991, he completed a trade-school course in brick masonry, and he has worked as a brick mason since. He earned three college credits, but he never finished college. Between 2003 and 2005, the employee joined a brick mason's union, which assigned him to work mainly for American Cast Iron Pipe Company ("ACIPCO") until "the real estate crash," when, the

4

employee said, he began working for other companies. In the last couple of years leading up to his accident, the employee worked mainly through his union for the employer at ACIPCO's plant, working 12 to 16 hours per workday. While working for the employer, the employee laid brick and gunite, but he mostly laid shotcrete. Laying shotcrete involves blasting concrete material through a hose. He earned between $60,000 and $65,000 per year.

The employee said that, on February 2, 2019, he was working on a platform when he was struck by a "luden buggy," which caused him to fall off the platform 12 to 14 feet to the ground. The employee landed on his left heel and twisted his foot before collapsing onto the floor. He was taken to a local hospital, where he was diagnosed with a left calcaneal fracture and a closed compression fracture of the L-1 lumbar vertebra. According to the employee, his left foot was splinted and placed in a cast, and he was discharged that day.

The employee testified that, after his discharge, the employer authorized Dr. Jerome Ambrosia of the Alabama Orthopedic Clinic to treat him for his work-related injuries. The medical records from the Alabama Orthopedic Clinic show that Dr. Ambrosia primarily treated the

employee from February 5, 2019, to May 29, 2019. On the first visit, Dr. Ambrosia recommended nonsurgical treatment for both the lumbar compression fracture and the left calcaneal fracture. He advised the employee that calcaneal fractures often result in post-traumatic pain and arthritis but that he did not believe that surgery would improve the employee's outcome. Dr. Ambrosia recommended that the employee avoid bearing any weight on his left foot for eight weeks and advised him to keep the foot iced and elevated. Over the course of the next eight weeks, the employee underwent physical therapy, and Dr. Ambrosia recorded that the employee was improving. On May 1, 2019, the employee reported left-knee pain that Dr. Ambrosia related to the employee's walking differently due to his calcaneal fracture.

On May 29, 2019, Dr. Ambrosia reported that the employee was "mobilizing better swelling pain [has] improved significantly. He [is] still using a cane to get around. Otherwise it appears that his fractures have healed and stabilized." Dr. Ambrosia opined that the employee would likely have a permanent impairment due to his calcaneal fracture. He noted that he wanted the employee to undergo a functional-capacity evaluation ("FCE") and that he would see the employee again after the

6

FCE was completed. The parties stipulated that the employee reached maximum medical improvement on May 29, 2019.

The employee testified that, while he was under Dr. Ambrosia's care, his left calcaneal fracture eventually started getting better, but that his lumbar compression fracture never improved. The employee did not attend the FCE recommended by Dr. Ambrosia, and he did not return to see Dr. Ambrosia until February 2024.[1] The employee explained that he had not been informed that he had been referred for an FCE.

The employee related that, despite his treatment by Dr. Ambrosia, he continued to suffer pain in his left ankle, left knee, left hip, and back. In July 2019, he sought further medical treatment through Medplex MD, where Dr. Robert Agee became his primary treating physician. On July 23, 2019, the employee presented complaining of low-back pain that was constant, achy, and throbbing and radiated into his left leg. Reviewing a magnetic-resonance-imaging scan, Dr. Agee diagnosed the employee with "[n]ondisplaced fracture calcaneus. Large associated bone contusion. Bone contusion adjacent medial talus. Chronic talonavicular and

---

[1]The record does not contain any documentation relating to the February 2024 visit.

posterior subtalar degenerative joint disease. Chronic plantar fascia enthesopathy. Mild posterior tibialis tendonitis." On September 10, 2019, Dr. Agee referred the employee for an FCE.

On September 24, 2019, David Bledsoe, an occupational therapist, performed the FCE recommended by Dr. Agee. Bledsoe explained at trial that an FCE is a performance-based test to determine a person's physical-demand level for work. Bledsoe testified that the employee had reported that he was suffering from left-ankle pain only, and that, during the FCE, the employee had displayed a noticeable limp, or gait derangement. Bledsoe determined that the employee was limited in how long he could walk and that he could only occasionally lift up to 35 pounds from floor to overhead. Bledsoe opined that the employee could fully meet the physical demands of sedentary and light-duty employment and could partially meet the physical demands of medium-duty employment. Bledsoe also estimated that, without considering the employee's fractured vertebra, the employee had sustained a 17% permanent impairment to his left lower extremity and a 7% permanent impairment to his whole person.

Bledsoe said that he had referred to the <u>Dictionary of Occupational Titles</u> ("the DOT") to obtain a job description for "brick-layer construction" and "brick-layer refractory tile." He said that the employee could not perform the job of brick-layer construction because it involved heavy-duty employment and that he could perform only some of the job duties associated with brick-layer refractory tile, which involved medium-duty employment. Bledsoe testified that the employee had described his job as involving very heavy labor. He opined that the employee could not return to heavy-duty work as a brick mason, as described in the DOT, but, he said, it was possible that he could perform some brick-mason jobs that differed from the description of that job in the DOT. Bledsoe admitted that the employee would have exceeded the physical limitations recommended in the FCE if he had been able to work in heavy-duty jobs since 2019. Bledsoe testified that he had talked to the employee shortly before the trial and that he maintained the same opinions regarding the employee's functional capacity at the time of the trial.

Following the FCE, the employee did not seek regular medical treatment for his work-related injuries. In September 2021, the

employee was deposed, and, when asked to describe the injuries he had sustained from the work-related accident, he did not mention hip pain or radiating pain from his back injury. The employee testified at trial that his left hip began hurting after his deposition and that it had worsened in the ensuing three years. Between 2021 and 2023, the employee made annual visits to a local Veteran's Administration ("the VA") hospital. The VA records show that the employee was experiencing left-ankle pain and was using a brace on the ankle, but the VA records do not mention the employee's back injury or pain radiating from that back injury. The employee testified that the VA doctors could not treat his work-related injuries, so they did not document his complaints relating to his back injury. The employee testified that he received treatment from the VA doctors for conditions unrelated to his work-related injuries.

Shortly after his work-related accident, the employee returned to work performing sedentary office duties. After reaching maximum medical improvement in May 2019, the employee resumed working as a brick mason for the employer until July 3, 2020. The employee testified that, during that period, he had worked fewer days and fewer hours and had not performed the full duties of a brick mason. Despite that

testimony, the employer submitted records showing that the employee had often worked full-time and had worked some overtime during that period.

During lulls in his employment in 2019 and 2020, the employee applied for unemployment-compensation benefits on five different occasions, just as he had done before he was injured. On each application, the employee indicated that he was physically able to work full-time in his normal trade but that he was seeking unemployment-compensation benefits due to lack of work. In his last three applications, the employee also denied that he had applied for workers' compensation benefits despite having commenced the underlying civil action. The employee testified that "[a]ll I was saying when I filled that out was that I could return to work. It doesn't say in what capacity." The employee testified that he had not been able to work at full capacity as a brick mason since his work-related accident.

On November 4, 2021, the employee applied at a local Wal-Mart store for a job. On November 16, 2021, Wal-Mart offered the employee a job as an order filler. The essential functions of the job included reaching overhead, reaching below the knees, bending, twisting, pulling, and

stooping. The job also involved standing and walking for extended periods of time; lifting, pulling, and carrying objects and equipment over shoulder level; and moving, lifting, carrying, and placing merchandise up to 60 pounds without assistance. The employee agreed that he could perform those tasks, but, he said, he never did them because, after he accepted the job, he had worked for Wal-Mart solely as a forklift operator. The employee agreed that, in 2022, after being transferred to a Wal-Mart store in Cullman, he had signed a document indicating that, as a forklift operator, he could lift long, heavy items onto pallets and that he could work in tandem with other employees to lift heavy items. The employee testified that he had taken the job at Wal-Mart because it required him to work only three days a week and he needed to take care of his ailing mother.

Following his job at Wal-Mart, in June 2023, the employee resumed working as a brick mason. He remains a member of the brick mason's union and has been assigned mainly to work for Norris & Son. The employee testified that he works for Norris & Son because the company works in power plants "[a]nd that's about the easiest work you can get." The employee said that he had declined other assignments because he

can work only three or four days at a time. At the time of the trial, the employee, who was 58 years old, had not worked in 2 months.

At the time of his work-related accident, the employee was earning an average weekly wage of $1,176.15. In 2019, the employee earned approximately $35,000. In 2020, he earned approximately $29,600. In 2021, the employee earned approximately $16,049. In 2022, the employee earned approximately $39,606. Since 2022, the employee had not earned as much annually as he did before his injury.

The employee testified at trial that he initially had experienced some relief from his injuries, but, he said, his pain progressively worsened. He testified that, at the time of the trial, his left ankle felt tight and that he felt unsteady walking downhill, so he used a cane. He also experienced constant throbbing pain radiating from his back down through his left lower extremity. He testified that he leans on furniture to help him walk to the bathroom in the morning "just to get moving," and, he said, the pain "don't ever stop" and "hurts all the way up my leg to my back." He attributed that pain to his altered gait. The employee said that, at the time of the trial, he could work only part-time because he "can't hold out that long."

## The Findings of Fact

In the final judgment, the trial court determined that the employee was permanently and totally disabled. The judgment provides, in pertinent part:

"9. Based on [the employee]'s testimony at trial and evidence presented, [the employee] was employed as a brick mason with [the employer] where his duties included working on an average of twelve hours per day, where he laid brick, shotcrete, and gunite.

"10. Based on the testimony of David Bledsoe and testimony provided in open court, [the employee]'s job with [the employer] required the performance of medium to heavy duty work as [c]lassified by the [DOT].

"11. Following his injury, [the employee] has experienced low back pain that radiates into his left leg as well as being diagnosed with chronic plantar enthesopathy and posterior tibialis tendonits.

"12. Since his injury with [the employer], [the employee]'s gait has been altered, causing him to limp at times, and experience pain in his back and left leg.

"13. The [c]ourt finds that [the employee] sustained a seven (7) percent physical impairment rating to the body as a whole and is limited to the full scope of 'light duty' category work in accordance with the [DOT]. According to the evidence, [the employee] underwent a functional capacity evaluation ('FCE') with David Bledsoe, occupational therapist, and on September 24, 2019. According to Mr. Bledsoe's testimony, the results from the FCE indicated that while [the employee] can [perform] some medium duty work, [he] cannot completely perform at that work level. He additionally stated

that an eight hour work day requiring constant walking is outside of the recommended FCE limitations. Mr. Bledsoe compared the [DOT] listings for both 'brick layer refractory tile' and 'brick layer construction' and opined that [the employee] could not fully perform either. As such, Mr. Bledsoe recommended that [the employee] be restricted to the full light duty work category job classification.

"14. The [c]ourt also finds that in addition to physical restrictions, [the employee] also suffers from continuing and constant pain relating to his injury in his left ankle, back, hip and left knee.

"15. Further, based on evidence presented at trial and this [c]ourt's observations, as a result of the injury to [the employee]'s back and left leg, he now suffers from increased lifting restrictions and an inability to stand, lift, and/or sit for long periods of time without facultative breaks. This injury has interfered with the efficiency of other body parts and affected his body as a whole.

"16. Based on the testimony presented at trial, [the employee] graduated from [h]igh [s]chool, served in the United States Army, and then went through a journeyman program with the Alabama Home Builder's Association. Since that time, and up until the time of his injury, he worked as a brick mason with the union. Most, if not all, of [the employee]'s work was in the 'medium' to 'heavy' duty job classification.

"17. Following his injury, [the employee] has worked in a limited and inconsistent capacity in various jobs. He has not been able to earn wages similar to or even close to the wages he was earning prior to his injury, and has been unable to return to work in a permanent capacity as a brick mason.

"18. Based on [the employee]'s age, prior work history, experience, and education, as a result of [the employee]'s on

15

the job injury, he is unable to continue his trade as a brick mason and is unable to find gainful employment in another trade.

"....

"After viewing [the employee] first-hand in [c]ourt, reviewing the evidence presented, together with [the employee]'s sworn testimony and the testimony of occupational therapist David Bledsoe, the [c]ourt is of the opinion that [the employee] has suffered a permanent and total loss of earning capacity, and is no longer capable of gainful employment. With the evidence presented at trial, including [the employee]'s testimony regarding his injured leg and back, as well as the continuing and resulting pain in his left leg, hip, and lower back area, [the employee]'s credible subjective complaints of pain and difficulty walking for extended periods of time, [the employee] has suffered a permanent loss of his ability to earn. The [c]ourt specifically concludes, in light of [the employee]'s education, training, and work history and the substantial lack of manual labor for which he is now suited as a result of his workplace injury, that [the employee]'s on the job injury with [the employer], made basis of this suit, has caused him to suffer a 100% loss of his ability to earn and find gainful employment."

The trial court awarded the employee $226,717.61, "representing the accrued and unpaid compensation for permanent total disability in the amount of $784.49 per week from May 29, 2019 through December 17, 2024," and "the sum of $666.82" weekly so long as his permanent-total disability continues.

16

Analysis

Section 25-5-57(a)(4)d., Ala. Code 1975, provides, in pertinent part:

"[A]ny physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment, shall constitute prima facie evidence of permanent total disability but shall not constitute the sole basis on which an award of permanent total disability may be based."

Permanent total disability refers to the inability to perform one's trade and the inability to find or be retrained for gainful employment. See Mead Paper Co. v. Brizendine, 575 So. 2d 571, 574 (Ala. Civ. App. 1990).

"The question of whether an employee can return to his former trade is basically a threshold issue; if the employee can resume his trade then it is obvious that he is not permanently, totally disabled, and the court need inquire no further. If he is unable to return to his trade, then § 25-5-57[, Ala. Code 1975,] requires the court to find that other employment is unavailable and retraining is not feasible."

Id. In Brizendine, this court explained that the test for permanent total disability is applied conjunctively so that the trial court must determine that an employee meets all the statutory criteria to be found permanently and totally disabled. 575 So. 2d at 574. Thus, even if an employee cannot return to his or her former trade, if the employee can secure and perform other gainful employment -- the second component of the statutory

17

formula -- the employee cannot be deemed permanently and totally disabled.

In its findings, the trial court expressly determined that the employee was "unable to continue his trade as a brick mason and <u>is unable to find gainful employment in another trade</u>." (Emphasis added.) The employer argues, among other things, that the undisputed evidence showed that the employee could physically work within the limitations established in his FCE and that he, in fact, had consistently worked since his work-related accident, except for the periods when he was collecting unemployment-compensation benefits.

Bledsoe testified that, based on the FCE, the employee displayed the ability to perform the full range of the physical demands of light-duty jobs and a partial range of the physical demands of medium-duty jobs. The employee testified that his altered gait and lower-back and left-hip pain had progressively worsened since his work-related accident, but he did not present any evidence indicating that his physical abilities had deteriorated to the point that he could no longer perform work within the limitations established by the FCE. Bledsoe testified that, after

18

conversing with the employee regarding his current condition, his opinion regarding the employee's functional capacity remained the same.

The employee testified that, when he resumed working as a brick mason in 2019 and 2020, he did not perform the full range of his previous duties and worked shorter hours, but the evidence in the record shows that he was able to earn significant wages even in his diminished capacity. During layoffs, the employee applied for unemployment-compensation benefits, and, in each application, he represented that he was ready, willing, and able to work. The employee admitted at trial that he had meant that he could work in some capacity. See CVS/Caremark Corp. v. Washington, 121 So. 3d 391, 402-03 (Ala. Civ. App. 2013) (Moore, J., concurring in the rationale in part and concurring in the result) ("A statement made by a worker in an application for unemployment-compensation benefits is an extrajudicial admission .... That statement is 'in the nature of an admission on the part of the plaintiff which bore heavily against him in weighing the conflict in the evidence ....'" (quoting Bell v. Tennessee Coal, Iron & R.R. Co., 247 Ala. 394, 396, 24 So. 2d 443, 444 (1946))).

In 2021, the employee applied for a job as an order filler at a Wal-Mart store in Jefferson County, certifying that he was able to perform the essential functions of that job, which exceeded his FCE limitations. The employee testified, however, that he was hired as a forklift operator instead. In 2022, when he was transferred to a Wal-Mart store in Cullman, he signed a document stating that he could perform the essential functions of a forklift operator, which also exceeded his FCE limitations. However, the employee testified that he performed the heavy-lifting aspects of his job with help from other employees. The record contains no evidence indicating that the employee was unable to perform the job, that he missed work due to his injuries, or that he quit that employment due to his pain or physical limitations. The employee earned almost $40,000 in 2022 as a forklift operator. In 2023, the employee resumed working as a brick mason on a part-time basis, taking temporary assignments that he could physically perform. The employee remained a member of the brick mason's union at the time of the trial.

The employee is not necessarily disqualified from being awarded permanent-total-disability benefits simply because he worked for a substantial period after reaching maximum medical improvement. See

Waters Bros. Contractors v. Wimberley, 20 So. 3d 125, 135 (Ala. Civ. App. 2009). If an employee returns to work and experiences a worsening of his or her work-related injuries that eventually prevent the employee from maintaining employment, the period of employment does not preclude a trial court from finding that the injury has gradually resulted in a permanent total disability. See, e.g., Hudson Indus. v. Harrell, 484 So. 2d 1099 (Ala. Civ. App. 1986) (holding that truck driver who returned to work at same wages for a period, but who subsequently underwent spinal surgery, could recover permanent-disability benefits). However, in this case, the evidence in the record does not support the finding that the employee is unable to secure and perform gainful employment.

Although the employee testified that his pain had progressively worsened over the years after his injury, the record contains no evidence indicating that the employee lost the ability to work due to a deterioration in his condition. The employee admitted that, in 2019 and 2020, he was able to work as a brick mason in a limited capacity. The employee conceded that, in 2019 and 2020, he could also work in other employment within his capacity, as he represented when applying for unemployment-compensation benefits. The employee acknowledged that

21

he earned substantial wages in 2021 and 2022 while performing his part-time job as a forklift operator for Wal-Mart. Since 2023, he has been able to work part-time for Norris & Son as a brick mason. That evidence shows that, despite his testimony that his pain had progressively worsened, the employee had been able to find and maintain gainful employment in the years since his work-related accident.

The record contains no evidence indicating that the employee was working in sheltered employment between 2019 and 2024. The employee did testify that he could work only three or four days at a time, indicating that he could work only part-time. However, the employee, who bore the burden of proof, see Fort James Operating Co. v. Kirklewski, 893 So. 2d 434, 441 (Ala. Civ. App. 2004), failed to present any evidence indicating that he could not find part-time gainful employment within the limitations established in his FCE. The employee had previously worked at two different Wal-Mart stores as a part-time forklift operator. The record contains no evidence indicating that the employee could not find stable and dependable work commensurate with his skills and physical limitations.

22

Conclusion

The evidence in the record shows that the employee's injuries and impairments did not permanently and totally incapacitate him from finding gainful employment.  The trial court misapplied the law to the undisputed facts when it found that the employee was permanently and totally disabled.  We, therefore, reverse the judgment and remand the case for the trial court to enter a judgment consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.